[No. 11758. In Bank. — September 27, 1887.]

## N. HONIG, RESPONDENT, *v.* PACIFIC BANK, APPELLANT.

PRINCIPAL AND AGENT — AGENT ACTING FOR DISCLOSED PRINCIPAL — CERTIFICATE OF DEPOSIT — PAYMENT TO AGENT — LIABILITY OF BANK. — Where a person purporting to act as agent for a disclosed principal, but without any authorization from him, deposits money of the principal in bank, and receives certificates of deposit therefor payable on the order of the principal, the latter upon learning of the transaction may ratify the same and maintain an action against the bank on the certificates; and the facts that the agent, at the time of receiving the certificates, indicated in a private memorandum-book of the bank that the certificates should be paid upon being indorsed in the name of the principal by him as agent, and that the bank had paid the same to him upon such indorsement, and regained possession of the certificates, will not relieve the bank from liability thereon to the principal.

ID. — ACTION ON CERTIFICATES — BURDEN OF PROOF. — In an action on such certificates, the principal is *prima facie* entitled to recover their face value, upon proving their execution and delivery, and that they had not been paid to him; and the burden of proving that a less amount of the principal's money was received by the bank is on the defendant.

ID. — FICTITIOUS PRINCIPAL. — Where a deposit in bank is made by a person purporting to act as agent for a disclosed principal, the bank cannot assume that the named principal is a fictitious person, and if it does so, it will be at its peril.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Charles J. Swift,* for Appellant.

*Crittenden Thornton,* and *F. H. Merzbach,* for Respondent.

TEMPLE, J. — This action is brought upon six certificates of deposit, made, executed, and delivered to the plaintiff by the defendant. They are all in the same words, except as to date and amount. The following is a copy of the first issued: —

"$250.                                        No. 3,289.

"PACIFIC BANK, N. W. cor. Sansome and Pine Streets—
                    Series B.

          "SAN FRANCISCO, January 19, 1885.

"N. Honig has deposited in this bank two hundred and fifty dollars in gold coin, payable to self or order on the return of this certificate properly indorsed.

                    "M. W. UPTON, Teller.

"S. G. MURPHY, Cashier."

The deposits were in fact made by one S. A. Peyser, who was the clerk of the plaintiff, and the certificates were delivered to him. When he made the deposits, Peyser demanded certificates, and wrote in the register of certificates of deposit, under the head of "To Whose Order," "N. Honig, by S. A. Peyser," and the money was paid to him on each and all of the certificates. Honig had for many years been a well-known business man in San Francisco, but he had never had dealings with the defendant other than to collect money on checks on the bank; and it does not appear, otherwise than by the register and the issuance of the certificates, that the officers of the bank ever knew of his existence.

Peyser was in the employ of Honig, and was intrusted with the collection of moneys, but Honig did not authorize him to make these or any deposits with the bank;

did not in fact know of the deposits, or that any certificates had been issued, until long after the certificates had been paid to Peyser, as before stated. Of course Peyser had no authority from Honig to indorse the certificates, or to obtain the money upon them. Some time after their payment, Honig discovered the fact, and brought this suit upon the certificates, although they had been so paid, and had in fact been surrendered by Peyser to the bank, and were still in possession of the bank.

As to the register of signatures, the cashier testified as follows: "The register book of certificates of deposits is a signature book, or book of identification, which is placed before a person making a deposit in this way, and in which he writes his name then and there; and opposite to that man's name is the amount that the certificate is issued for and the number; and on the return of that certificate to the bank, the paying teller is required to examine and compare the signature of the indorsement with the signature of the party depositing the money; and if that signature is not genuine, and has not the appearance of being genuine, and written by the party who deposits the money, payment is refused upon it."

It is contended that a certificate of deposit is a form of deposit by one with whom the bank has not a regular account; that the depositor, on leaving his money, leaves also his signature, thereby designating upon what indorsement the money may be withdrawn; that the contract really is to pay upon the surrender of the certificate indorsed by the same person, and in the same way that the register is made in the certificate of deposit book. But the trouble with this contention is, that the certificate is a negotiable instrument. On their face, the certificates sued on are payable to N. Honig or order. The register is a private book kept by the bank for its own convenience and protection. It forms no part of

the negotiable instrument issued by the bank. If an indorsement is required, the character of it is indicated on the face of the paper itself, which is expressly made payable to Honig or order.

The exigencies of the defendant's case would require us to hold that,—1. Had Honig presented in person the instrument which is expressly made payable to him or order, the bank could have properly refused payment, and that upon such refusal no action would lie on the part of Honig against the bank; 2. That had Honig assigned the certificate for a valuable consideration, the assignee could not have obtained the money, although by law it is negotiable, and is expressly made payable to Honig's order; 3. That Peyser could have indorsed Honig's name, and demanded the money, although the defendant knew he was no longer in the employ of Honig, and that Honig expressly protested against his authority to indorse his name, or to receive the money for him; that is, that Peyser was able without Honig's knowledge or consent to constitute himself Honig's agent, and that the agency was irrevocable; and 4. In case of Honig's death, his administrator could not get the money, but Peyser could still obtain it; and in case of his death, his administrator, too, could have drawn the money.

If I send my messenger boy to make a deposit for me, and he discloses his principal, and the certificate is issued payable in terms to me, the contention is, that I cannot collect the money until I cause my own name to be indorsed on the certificate by the boy, who at the time may be in Hong-Kong. This cannot be so. If the bank keeps a certificate book for its protection, its officers must see to it that they get the right signature in the book. It cannot, by taking the wrong signature, prevent the true owner from getting his money on demand.

There is no contract, express or implied, that the certificate was payable only when indorsed according to the

signature in the register.    The certificate of deposit register is evidently a mere private book, whose contents cannot concern the holder of a negotiable certificate; but if it were otherwise, it is difficult to discover how it could help the defendant.    For, after all, this book only shows the number of the certificate, the amount for which it was drawn, and to whose order it was made payable, which in this case was Honig.    The cashier is presumed to know that no act of his could authorize Peyser to act as Honig's agent; and that if Peyser had then been the agent of Honig, it was competent for Honig to withdraw the agency at any time.

It is said that a person may deposit in a fictitious name, or may give any name he chooses at the bank; so he may represent himself as the agent of a fictitious principal, and in such case he can draw the money in the name in which the deposit was made.    Let this be admitted.    It does not cover this case.    Here the principal was not fictitious.    The bank cannot assume that a named principal is a fictitious person, or if it does so, it will be at its peril.    (*Morgan* v. *Bank of State of New York*, 1 Duer, 434.)    The fact that the certificates were in the possession of the defendant is immaterial.    They had been executed and duly delivered to the plaintiff through his agent.    The defendant came into possession of them wrongfully, and without having paid them to plaintiff or his order.

It is said that plaintiff cannot recover the full amount of all the certificates, for he has not shown that defendant received more than three hundred dollars altogether. This is upon the theory that Peyser may have drawn the money on the first certificate, and redeposited it, or some of it, to purchase the second certificate, and so on. This would perhaps have been a tenable position if Honig had sued for money had and received, ignoring the certificate on the ground that the deposit was not authorized by him.    But there can be no doubt of the

proposition that plaintiff was at liberty to ratify the unauthorized act of his agent, and sue on the certificates, and that he could do this without authorizing Peyser to indorse his name upon the certificates. They were entirely distinct transactions. The action, then, was brought upon several negotiable instruments, each of them reciting the exact amount of money received from Honig, and promising to pay the same to Honig or his order. None of them have been paid to plaintiff or his order, or to his agent. When plaintiff proved the execution and delivery of the instruments, and that they had not been paid, he made out his case. All that appears in answer to this is, that under the peculiar circumstances of this case it is possible that only three hundred dollars of Honig's money was received by the bank. We cannot disturb the finding of fact of the trial court, on the ground that upon the evidence it is possible that the defendant did not receive so much of the plaintiff's money. The burden of proof was clearly shifted to defendant.

The defendant having possession of the certificates, the plaintiff was not required to produce and surrender them; but if that were necessary, it was done when the defendant was compelled to produce them, and submit them to the court. Having come into the possession of them unlawfully, defendant held them for the plaintiff.

The judgment and order should be affirmed, and it is so ordered.

SEARLS, C. J., McKINSTRY, J., and SHARPSTEIN, J., concurred.

McFARLAND, J., dissenting. — I dissent. This is an appeal by defendant from a judgment in favor of plaintiff, and from an order denying a motion for a new trial. The complaint contains six counts. The first avers that on January 19, 1885, defendant "made and

executed unto the plaintiff its certain paper writing, whereby it promised to pay unto plaintiff, or his order, the sum of two hundred and fifty ($250) dollars"; and that afterwards plaintiff demanded payment of the same, and defendant has not paid the same, nor any part thereof. There is no averment of the specific character of the "paper writing," or that it was ever delivered to plaintiff, or that he ever had possession of it, or that he was ever the owner or holder of it, or that he ever presented it at the bank of defendant for payment. The other five counts are similar to the first, except that in each count a "paper writing" of a different date, and for a different amount, is averred. The largest amount named in either count is three hundred dollars; and the latest date the second day of March, 1885. The aggregate amount of all the paper writings was $1,250, for which sum, with interest, judgment was rendered.

At the trial, plaintiff, to prove the averments of his complaint, procured from the custody of defendant six paper writings, each marked "Paid" on its face, and introduced them in evidence, against the objections and exceptions of defendant. They proved to be paper writings in the form of certificates of deposit, in which plaintiff was named as depositor. The one first in date — and the others were the same, *mutatis mutandis* — was as follows: "N. Honig has deposited in this bank $250 in gold coin, payable to self or order on return of this certificate *properly indorsed.*" It was properly signed by the officers of the bank, and was indorsed "N. Honig, by S. A. Peyser." Across its face it was marked with a blue stamp: "Paid 23 Paying Teller."

The undisputed facts of the transaction are these: On the said 19th of January, — the date of first certificate, — one S. A. Peyser went into the bank of defendant and deposited $250, and took for it a certificate of deposit. It is the custom of the bank, when a man wants

a certificate of deposit, to request him to write his name in a signature book, or book of identification. Opposite his signature is written the number of the certificate issued him, with date, amount, etc., so that when it is presented for payment, the paying teller, by comparing the signature by which it is indorsed with the signature previously written in the book, may see that they are the same, and that therefore the certificate is " properly indorsed." In accordance with this requirement, Peyser wrote in the signature book " N. Honig, by S. A. Peyser," under the heading "To Whose Order," and the certificate was issued and delivered to him with " N. Honig " named as depositor. In a few days Peyser returned with the certificate indorsed just as written in the signature book, — " N. Honig, by S. A. Peyser," — was paid the money, and delivered up the certificate to the bank for cancellation. Shortly afterwards he made another deposit, and received another certificate in the same way, which, in a few days, was paid to him in like manner; and so on, until the six certificates had been thus issued and paid, except that one of them was payable to " N. Honig, per S. A. Peyser," and another was also indorsed by a firm called "Davis & Co.," and seems to have passed through the clearing-house. Each time Peyser wrote in the signature book " N. Honig, by S. A. Peyser," and the certificate was thus indorsed before payment. Each certificate was paid before its successor was issued, so that the greatest amount which Peyser ever had at the bank at any one time was three hundred dollars.

While these transactions were taking place, the plaintiff, Honig, knew nothing whatever about them. He had never authorized Peyser to deposit any of *his* money at that bank, and did not know that Peyser had made any deposits there of any character. Honig had never been a customer of the bank, had no account there of any kind, and had never himself received from it any

certificate of deposit, and he was entirely unknown to the bank. But after the transactions were concluded, and all the certificates had been paid and taken up by the bank, the said Peyser died; and a few months after his death, plaintiff, having then learned of these transactions, demanded of the defendant that it should pay all of said certificates over again to him; and the demand being refused, this action was commenced. He made no proof at the trial that any of the money deposited by Peyser belonged to him (plaintiff), but he relied entirely on the mere fact that his name was in the certificates as depositor.

Upon these facts, I do not think that plaintiff was entitled to judgment, and therefore, I do not deem it necessary to discuss at length appellant's two points, that the complaint was not sufficient, and that the certificates were not admissible in evidence. I do not see how the principles of law, applicable to the peculiar qualities of negotiable paper, can be invoked in this case. Those principles apply, ordinarily, when the rights of sureties, indorsees, guarantors, and third persons generally, intervene. If the certificates invoked in this case had not contained the words "or order," or any equivalent words, the claim of plaintiff would not have been of any less legal value. If it be shown that a negotiable instrument made by A to B was without consideration, B cannot maintain an action upon it against A. Between the original parties, there is not often any difference whether a bailment or debt be evidenced by a simple receipt or a negotiable promise, except that in the latter case a consideration is presumed. If the money deposited by Peyser with defendant was not the money of plaintiff, upon what principle can he recover in this action? If he had obtained possession of the certificates before payment, and then had demanded payment, or had indorsed them to third parties, different questions might have arisen. The only parties to the contract

were the bank and Peyser; part of that contract was that the certificates should have the indorsement which had been written in the book of identification; they were returned with that indorsement; the money was paid, and the instruments were taken up and canceled; and thus the contract was executed and ended before there was any assertion to the claim—real or pretended —of plaintiff.

The only position having any strength which plaintiff could take is, that the certificates, being in form negotiable, import a consideration; that is, make a *prima facie* case of ownership of the money by plaintiff. Plaintiff, however, in his testimony, entirely repudiates the agency of Peyser in every part of the transaction. He says that he knew nothing about the certificates until after Peyser's death. But if Peyser was not plaintiff's agent in receiving the certificates, then the insertion of plaintiff's name therein goes for naught, and he can base no right thereon. On the other hand, if, notwithstanding his testimony, he seeks now to adopt and ratify the agency of Peyser, he must adopt the whole of that agency or none. (Story on Agency, sec. 250.) But suppose it be assumed that the money belonged to plaintiff, and was in the possession of Peyser, as his agent, how would the case stand then? It has been held in some cases that an original bailor may maintain detinue against a second bailee; but never, we apprehend, where the second bailee has safely redelivered the thing bailed, according to his contract, to the first bailee before notice and demand by the original bailor. (Story on Bailments, secs. 105–107.) If B, having the custody of money of A, intrusts it to C for temporary safe-keeping, and C returns it to B before any notice or demand by A, then A has no action, either *ex contractu* or *ex delicto*, against C, because C has neither broken a contract nor done a wrong.

However, I think that no case can be found where an

action has been successfully maintained directly upon a negotiable instrument not lost or destroyed before cancellation, when the plaintiff had never been in possession of the instrument, and had never known of its existence until after its existence had ended. Here the appellant was in possession of the instruments sued on at the time the action was commenced, claiming to own them as canceled obligations. And it has been directly held, in *Crandall* v. *Schroeppel*, 1 Hun, 557, that a party claiming to own a promissory note in the possession of another, who also claims to own it, cannot maintain action on it, and that the title to the note cannot be settled in such an action. Of course, this case differs widely from the common case where a man opens a general account with a bank, and a *contract relation* between the parties exists from the start. There the original party alone has the right to draw against the account, no matter by whom he may send deposits. It no doubt would have been more regular and safer if appellant had required Peyser to take the certificates in his own name, and dangerous complications might have arisen; but under the facts here, in my opinion, there is no phase of justice, and no rule of law, which compels appellant to repay these dead and canceled instruments.

PATERSON, J., dissenting. — I dissent. The bank and Peyser had the right to enter into an agreement that the former should pay the money deposited by the latter to the order of "N. Honig, by S. A. Peyser," and this agreement was binding, unless the rights of innocent parties intervened. The instrument never was delivered to Honig. The fact that it is negotiable in form is immaterial. If plaintiff's right to recover depends upon the agency of Peyser, it is sufficient to say that the plaintiff must ratify or repudiate all of his acts. He cannot ratify the deposit and repudiate the indorsement. There is nothing to show that plaintiff owned the money de-

posited by Peyser.  At most, the plaintiff ought not to recover more than three hundred dollars.

Rehearing denied.