[No. 12183.   Department One. — March 26, 1888.]

MARY LOWRIE ET AL., EXECUTRIX, ETC., OF JOHN
LOWRIE, DECEASED, APPELLANTS, v. S. SALZ ET AL.,
RESPONDENTS.

APPEAL — TIME FOR TAKING — DISMISSAL. — An appeal from a judgment, if
taken more than one year after its entry, will be dismissed.

NEW TRIAL — INSUFFICIENCY OF EVIDENCE — STATEMENT. — Where a motion
for a new trial is made on the ground of the insufficiency of the evidence
to justify the decision, but the statement fails to specify any particular
in which the evidence is insufficient, the statement as to that ground of
the motion must be disregarded.

ID. — SERVICE BY MAIL — PROOF OF. — The proof of service by mail of the
notice of appeal, held, sufficient.

AGENCY — DEATH OF PRINCIPAL. — The authority of an agent to bind his
principal by contracts made in his name is terminated by the death of
the principal.

ID. — AGENT ASSUMING TO ACT AFTER PRINCIPAL'S DEATH — TRUST. — A
person assuming to be the agent of another, who receives property or
benefits accruing by reason of such assumed agency, which property
belongs to the estate of the principal for whom he assumes to act, may be
treated as a trustee, and is liable as such to the estate of his assumed
principal.

ID. — WAREHOUSE  RECEIPT — POSSESSION — DELIVERY — CONVERSION. —
James Hogan, being indebted to the estate of one Lowrie, for whom one
John Munson assumed to be the agent, deposited certain cans of fruit in a
warehouse, and directed the warehouseman to give him a receipt as if de-
posited by Munson. A receipt was accordingly given to Hogan as follows:
"Received in Niles warehouse from John Munson the following cases of
canned goods on storage, for account and risk of —— (not transferable
or negotiable)," etc. Hogan had previously informed Munson that he
would deposit fruit in the warehouse sufficient to secure his indebtedness.
He never gave the receipt to Munson, but borrowed money on it from
the defendants, to whom, upon the surrender of the receipt, a new one
was given by the defendants. The defendants afterwards assigned their
security, and the fruit was sold by their assignee. The plaintiffs, the
executors of the will of Lowrie, thereupon brought this action for the
conversion of the fruit. Held, that the first receipt and deposit, not
having been made for the account of Munson, did not give him posses-
sion or constructive possession of the fruit, and that as he could not,
without a delivery of the receipt to him, have recovered the property,
the plaintiffs for whom he was assuming to act were in no better con-
dition.

ID. — EVIDENCE — OPINION OF WITNESS. — On the trial, the warehouseman
was asked whom he understood to be the depositor of the fruit: held,
that the question was improper, as calling for the opinion of the witness.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The notice of appeal from the judgment and order refusing a new trial was filed on the 26th of April, 1887. The proof of service of the notice consisted of an affidavit of one Robert W. Turner, made on the 30th of April, 1887, and filed on the 2d of May following, in which the affiant deposed as follows: "That he is, and at all times hereinafter mentioned was, over the age of eighteen years, and not a party to the above-entitled action; that he is a clerk in the employ of T. C. Van Ness, Esq., attorney for appellants herein; that on the twenty-sixth day of April, A. D. 1887, he served on T. C. Huxley, the attorney for the respondents herein, the notice of appeal to the supreme court in the above-entitled cause, by depositing in the post-office at San Francisco a copy thereof in an envelope addressed to 'T. C. Huxley, Esq., Centerville, Alameda County, California,' and that he prepaid the postage thereon; that said T. C. Huxley resides and has his office at Centerville, Alameda County, California, aforesaid, and that T. C. Van Ness, Esq., the attorney for appellants herein, resides and has his office in the city and county of San Francisco, state aforesaid; that there is a regular mail communication between said Centerville and San Francisco." The further facts are stated in the opinion of the court.

*T. C. Van Ness,* for Appellants.

The transaction between Hogan and Munson amounted to no more than the selection of the latter, as a trustee, to hold the property deposited in the warehouse, in pledge to secure the indebtedness due to the estate of Lowrie. The beneficiaries of the trust were the personal representatives of Lowrie. (Civ. Code, secs. 2216–2222; 1

Perry on Trusts, 3d ed., secs. 68, 82; *Handley* v. *Pfister,*
39 Cal. 283; 2 Am. Rep. 449; *Heermans* v. *Schmaltz,* 7
Fed. Rep. 566; *Ireland* v. *Geraghty,* 15 Fed. Rep. 35;
*Cariger* v. *Whittington,* 26 Mo. 311.) The creation of
the trust being sufficiently completed by the delivery of
the fruit, the defendants are liable. (*Scriber* v. *Masten,*
11 Cal. 303; *Rider* v. *Edgar,* 54 Cal. 127; *Dodge* v.
*Meyer,* 61 Cal. 405; *Cerkel* v. *Waterman,* 63 Cal. 34;
·*Honig* v. *Pacific Bank,* 73 Cal. 464.) The evidence shows
a sufficient delivery of the fruit. (*Hunter* v. *Wright,* 12
Allen, 548; *Honig* v. *Pacific Bank,* 73 Cal. 464; *Sumner*
v. *Hallett,* 12 Pick. 76; *Donohue* v. *Henry,* 4 E. D. Smith,
162; *Bailey* v. *Hudson R. R. R. Co.,* 49 N. Y. 70; *Grosvenor*
v. *Philips,* 2 Hill, 147; *Stafford* v. *Webb,* Hill and Denio
Supp. 213.)

*Thomas C. Huxley,* for Respondents.

The evidence shows that there was no delivery of the
fruit by Hogan to Munson. (*Bailey* v. *H. R. R. R. Co.,* 49
N. Y. 70; *Hitchcock* v. *Hassett,* 71 Cal. 331; *Horr* v. *Baker,*
8 Cal. 613; *Davis* v. *Russell,* 52 Cal. 615; 28 Am. Rep.
647; *Dodge* v. *Meyer,* 61 Cal. 416; *Chicago Co.* v. *Lowell,*
60 Cal. 455; *Cayuga Nat. Bank* v. *Daniels,* 47 N. Y. 633;
*Perkins* v. *Eckert,* 55 Cal. 405; *Godts* v. *Rose,* 17 Com. B.
229; *Brandt* v. *Facht,* 30 How. Pr. 313; Jones on Pledges,
secs. 264, 268.)

SEARLS, C. J.—This is an appeal from a judgment of
nonsuit, and from an order denying a new trial. The
motion to dismiss the appeal from the judgment must
be granted. The judgment was entered January 11, 1886,
and the appeal was taken April 26, 1887, more than one
year after the entry of such judgment.

The proof of service of notice of appeal was sufficient,
under the rule enunciated in *Reed* v. *Allison,* 61 Cal. 461,
and the motion to dismiss is denied as to the appeal
from the order denying a new trial.

One of the grounds specified in the notice of motion for new trial is "insufficiency of the evidence to justify the decision and judgment." The statement fails to specify any particular in which the evidence is insufficient; and hence to that extent, under section 659 of the Code of Civil Procedure, the statement must be disregarded. There was evidence tending to show that one John Lowrie was a ranch-owner in Alameda County, and was engaged in the business of farming and fruit-growing. In the summer of 1883 he departed from this state for Alaska, leaving in charge, as general superintendent and manager of his lands, one John Munson, who was authorized to carry on the business, sell the product of the ranch, etc. John Lowrie was lost at sea on or about October, 1883, but his death was not known here until July, 1884. In the mean time Munson had conducted the farming business. James Hogan, who was engaged in the business of purchasing and packing fruit at Centerville, Alameda County, had purchased fruit from the Lowrie ranch through Munson; and on or about August 23, 1884, was indebted therefor to the extent of about fifteen hundred dollars. It would seem that Hogan had agreed to pay some money on the fruit from time to time, to pay for picking, and the residue of the purchase price when he (Hogan) sold the fruit. In August, 1884, Hogan deposited in the warehouse of Mortimer and Wamsley, at Niles, in Alameda County, five loads of canned fruit, amounting to three hundred cases, and directed the warehouseman to give him a receipt as if deposited by Munson. A receipt was accordingly given in the following words and figures:—

"Niles, August 23, 1884.

"Received in Niles Warehouse from John Munson the following cases of canned goods on storage, for account and risk of —— (not transferable or negotiable), three hundred and sixty (360) cases canned goods.

Storage charges one cent per month, or for any fractional part of a month.

"MORTIMER AND WAMSLEY, Proprietors."

The receipt should have been for 300 cases, but by mistake was made 360. The warehouseman knew Hogan, did not know Munson, and supposed the deposit was in the name of the latter to avoid danger of legal proceedings by the creditors of the former. Hogan had previously informed Munson that he should deposit fruit in this warehouse (indeed, he had already deposited some), "and when he had got enough in there to secure me [Munson], he would give me the warehouse receipt, and that was all the talk we had about it. . . . . I never asked him for the receipt, and he never gave it to me." Hogan never gave the receipt to Munson, but borrowed money on it from defendants, to whom, upon the surrender of this receipt, a new *i*ne was given by the warehouseman. Defendants afterwards received the amount due them from Jones & Co., to whom they assigned their security, and the fruit was sold by the latter for twelve hundred dollars. Plaintiffs are the executors of the last will of Lowrie, and as such sue for the value of the fruit; and their right to recover was the question involved in the nonsuit.

1. The agency of Munson ceased with the death of his principal. From that time forward he could not bind the estate of the latter by contracts in the name of his former principal, for the reason that a dead man cannot have an agent, in the ordinary acceptance of the term.

2. If Munson, assuming to be the agent of Lowrie, received property or benefits accruing by reason of such assumed or supposed agency, and which property belonged to the estate of one for whom he assumed to act, he could be treated as a trustee, and would be liable as such.

3. The goods were deposited by Hogan in the name of Munson as depositor, it is true, but not for him or for

his account, but for account and risk of ——; that is, of some person not named. The receipt was given to Hogan, who had delivered the goods, and was never delivered to Munson. Had this receipt been filled out so as to show that the deposit was for the account and benefit of Munson, it would have been evidence of his right to the property; but in the form in which it was issued it failed in this particular. Had Hogan filled the blank by the insertion of the name of any given person, as we think he might lawfully have done, it would, upon delivery to such person, have entitled him, upon return of the receipt, to the possession of the goods. What he did do was to return the receipt, and procure another in the name of and for account of defendants. As the first receipt and deposit did not entitle Munson to possession, or give him constructive possession of the property, he could not, without delivery of the receipt to him, have recovered the property, and the representatives of Lowrie, whom we may suppose he was assuming to represent, were in no better condition. The case of *Honig* v. *Pacific Bank*, 73 Cal. 464, relied upon by appellants, is not in point. There the money was deposited by Peyser in the name of and for the account of Honig, and the certificate of deposit issued by the bank read as follows: "N. Honig has deposited in this bank two hundred and fifty dollars in gold coin, payable to self or order on the return of this certificate, properly indorsed," etc.; and this court held the bank liable in having paid the certificate without the indorsement of Honig. Had the receipt in this case specified Munson as the person for whose account the deposit was made, the analogy would have been complete, and so far as like rules apply to the two cases, they would have been parallel. Had the Honig certificate failed to name any person to whom it was payable, we may safely assume the decision would have been different. It would then have been payable to bearer upon return and surrender of the certificate. So here, the goods were subject

to delivery upon the return of the receipt. The receipt
was not negotiable, and that fact was impressed upon its
face, substantially as provided by section 8 of the act of
March 1, 1878, relating to warehouse receipts, etc. (Stats.
1877–78, p. 949.)

The exceptions founded upon the rulings of the court
touching the testimony of the witness Wamsley, who
was recalled by plaintiff pending the motion for nonsuit,
are not, we think, either important or tenable. It was
first sought to be shown by the witness, for whom he de-
livered the receipt in question. Upon objection, the
court held that plaintiff might show all that was said be-
tween him and the boy (Hogan's boy) fully. This was
all that was proper. No occult theory of the witness on
the subject, no mental reservation or intention of his, not
expressed, could alter the rights of the parties. The
witness was then asked whom he understood to be the
depositor of the fruit, and the court permitted the ques-
tion, and the witness replied: "Do you mean the owner?"
And the court said: "Depositor. You know what that
means, don't you?" And the witness answered: "The
man that put in there." The court thereupon asked the
witness if he understood the meaning of the term, and
received for response: "Well, I understand the use of
the word 'depositor' to mean the owner of the fruit."
To which the court responded: "You can answer it in
that light if you see fit. But that is not necessarily the
construction of the word. The man who delivered the
fruit there is the depositor, as a matter of law. Now,
with that view of it, answer the question." *Answer.*
"Why, Hogan was the man that delivered the fruit."
The witness certainly gave his own views upon the sub-
ject, and later answered as to the fact in the view
presented by the court. The question as put was objec-
tionable, so far as it called for the opinion of the witness,
rather than for the facts upon which his understanding
was based; and, had the court sustained defendants'

objection, there would have been no error in the ruling, and there was no error in the explanations and inquiries of the court and witness.

Taking the case as a whole, we think the testimony failed in establishing a predicate for recovery, and that the nonsuit was properly granted, and the motion for a new trial was properly denied. The appeal from the judgment is dismissed, because not taken within one year from the entry of such judgment, and the order denying a new trial is affirmed.

McKINSTRY, J., and PATERSON, J., concurred.

Hearing in Bank denied.