## FIDELITY & DEPOSIT CO. OF MARYLAND v. RANKIN.

### No. 1277.   Opinion Filed May 14, 1912.

#### (124 Pac. 71.)

1. **BANKS AND BANKING—Trust Funds—Application to Debt to the Bank.** A depositor, having an account with a bank in which he deposited trust funds, drew his check as trustee thereon to pay his private debt to the banker. The banker, with knowledge of the trust, concurred with the depositor in the appropriation by the depositor of the trust in order to pay an individual claim held against him by the bank. **Held,** that the bank acquires no title to said funds as against the true owner.

2. **TRUSTS—Mingling Trust Funds.** If a party mixes trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his. This doctrine applies to money deposited in banks.

3. **SAME—Misapplication.** Where a person holding money in a fiduciary capacity pays or transfers it to a bank with notice of his relation to it, for a purpose foreign to the trust, the bank cannot hold the money as against the true owner.

   (a)   An action to recover same will lie in favor of the true owner as against the party to whom the trust fund was transferred contrary to the trust.

4. **CLERKS OF COURTS**—Custody of Funds—Trust—What Constitutes. A United States Court clerk receiving moneys by virtue of his office holds the same in trust.

5. **COURTS**—Decisions—Controlling Effect. As to cases pending in the territorial courts in Indian Territory and Oklahoma Territory at the time of the erection of the state, the decisions of the Supreme Court of the United States are controlling.

(Syllabus by the Court.)

*Error from District Court, Logan County;
A. H. Huston, Judge.*

Action by the Fidelity & Deposit Company of Maryalnd against George C. Rankin, receiver of the Capitol National Bank of Guthrie. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with instructions.

*Devereux & Hildreth,* for plaintiff in error.

*Flynn, Ames & Chambers,* for defendant in error.

WILLIAMS, J. The plaintiff in error was surety upon the bond of T. A. Neal, clerk of the United States Court for the First Judicial District of Oklahoma Territory. The funds that he received as such clerk were deposited by him in the Capitol National Bank, at Guthrie, Okla., in his name as clerk of said court. He was indebted individually to said bank in a certain sum, which was discharged by his giving said bank a check on said fund deposited by him as clerk of said court; said check being drawn by him as said clerk. It was alleged that said bank applied said check against said fund, with the knowledge that said funds were trust funds held by him in the capacity of such clerk, and that the plaintiff in error as his official surety was required according to law to pay a defalcation in a certain sum, and an action was commenced by the plaintiff in error, as plaintiff, against the receiver of the Capitol National Bank, to recover said trust fund, and this proceeding in error is to review the judgment of the trial court, which, without the intervention of a jury, was a general finding in favor of the defendant.

In *Howard v. United States,* 184 U. S. 676, at page 683, 22 Sup. Ct. 343, at page 546, 46 L. Ed. 754, which was an

action on a clerk's bond, brought by an individual who had paid money into court, it is said:

"But it is suggested that, in the absence of a statute distinctly so providing, the clerk was not entitled to receive the money deposited in payment and satisfaction of Stewart's claim. It is true that no statute declares in words that a clerk may receive money brought into court for the purposes of pending suit. But it is clear that Henry county was entitled to bring into court and tender to its adversary the amount it was willing to pay in satisfaction of his claim. It cannot be that it was the duty of the judge of the court himself to have received the money and personally deposited it as required by law. No one has ever supposed that a judge was under obligation to perform such services. Who, then, was to receive the money? Plainly it was the duty of the clerk, who was the arm of the court, kept its records showing money paid in by suitors or officers, and was under bond conditioned that he would faithfully perform all the duties of his office. He was allowed by statute a commission 'for receiving, keeping and paying out money in pursuance of any statute or order of court.' Rev. Stat. 828 [U. S. Comp. St. 1901, p. 635]. It was well said by Judge Caldwell, delivering the unanimous judgment of the Circuit Court of Appeals, that 'for more than a century the clerks of the Circuit Courts of the United States have been receiving and paying out moneys of suitors in those courts in the usual and ordinary manner, and during that time neither the clerks nor the suitors nor the court ever dreamed that they were performing this service as private individuals, and were not officially responsible for the moneys they were receiving as such clerks.'"

This case was pending in the trial court at the time of the erection of the state, and *Howard v. United States, supra,* was binding on the trial court. *Moore v. A., T. & S. F. Ry. Co.,* 26 Okla. 682, 110 Pac. 1059; *Chicago, R. I. & P. Ry. Co. v. Newburn,* 27 Okla. 9, 110 Pac. 1065, 30 L. R. A. (N. S.) 432.

The averment in the petition is that the funds deposited in the Capitol National Bank to the credit of T. A. Neal, clerk, "were all trust funds, and that none of said funds were the individual property of said Neal," and "that said Capitol National Bank had notice and knowledge that the funds so deposited by said Neal in said bank to his credit as clerk of said district court were trust funds for which said Neal was accountable as

such clerk." It is averred that Neal paid his individual note for $1,000 by his check drawn on his trust fund, and which said check was signed by him as clerk; that said bank, at the time said check was given and at the time same was applied to the payment of said note, had notice and full knowledge that said Neal was using said trust funds for that purpose.

It is next averred that plaintiff in error, as his surety, some four years afterwards, "was obliged to pay and did pay the sum of $35,000 in order to indemnify the parties to whom said Neal was indebted as such clerk and to discharge its liability on said bond." The answer denied each of these averments.

C. H. Griswold testified that he was clerk of the district court of Logan county at the time of giving his testimony; that Neal was appointed clerk on October 7, 1901, and acted until the 4th or 5th day of May, 1905, and that during that time he was a deputy clerk, between 1901 and the spring of 1903, and copies of the bonds executed by the plaintiff in error were produced by him and introduced in evidence. He also testified that Neal had drawn a great many checks on the Capitol National Bank. Later, as a witness for the defendant, he testified that Neal deposited to his credit as clerk his fees and compensation for services, as well as the other funds; that he was in the habit of checking against this account as clerk for his personal use all the time; that his fees amounted to at least $7,000 a year. The record shows the official shortage and the payment by plaintiff in error of a sum in excess of the amount sued for.

L. H. Selsor, a witness for the plaintiff, testified that he was clerk of the receiver and in possession of the books of the bank, and that these books showed that Neal had executed a note to the bank for $1,000, dated April 3, 1902, which was paid by the check of Neal as clerk on August 4, 1902, and that on that date Neal executed another note for $1,000, which was paid by his check as clerk on January 2, 1903. On cross-examination Mr. Selsor testified that he did not know whether the money that was credited to Neal as clerk was a personal fund or a trust fund.

In *Central National Bank v. Connecticut Mutual Ins. Co.*, 104 U. S. 54, 26 L. Ed. 693, the agent of said company opened an account with the bank as agent, but not designating for whom. The officers of the bank, however, knew that he was the agent of the Connecticut Mutual Insurance Company. The agent became indebted individually to the bank. When such indebtedness matured, he had a large balance to his credit as agent. The bank having charged the notes up against this account, the insurance company brought a suit in equity to charge the bank. The syllabus of the case is in part as follows:

"(2)  The bank contracts that it will pay the money on his checks, and, when they are drawn in proper form, it is bound to presume, in case the account is kept with him as trustee, or as acting in some other fiduciary character, that he is in the course of lawfully performing his duty, and to honor them accordingly; but, when against such an account it seeks to assert its lien for an obligation which it knows was incurred for his private benefit, it must be held as having notice that the fund is not his individual property, if it is shown to consist, in whole or in part, of money which he held in trust relation.

"(3) As long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust; and, if a man mixes trust funds with his, the whole will be treated as trust property, except so far as he may be able to distinguish what is his. This doctrine applies in every case of a trust relation, and as well to moneys deposited in bank, and to the debt thereby created, as to every other description of property.  *  *  *"

"(5) When a bank account was opened in the name of a depositor, as general agent, and it was known to the bank that he was the agent of an insurance company, that conducting its agency was his chief business, that the account was opened to facilitate this business, and used as a means of accumulating the premiums on policies collected by him for the company, and of making payment to it by checks, the bank is chargeable with notice of the equitable rights of the company, although he deposited other money in the same account and drew checks upon it for his private use. The company may enforce, by bill in equity, its beneficial ownership therein against the bank, claiming a lien thereon for a debt due to it, which he contracted for his individual use."

In the opinion the court said:

"In the case of *Pannell v. Hurley,* 2 Col. C. C. 241, the depositor, having two accounts, one in trust, and the other in his own name, drew his check as trustee to pay his private debt to the banker. The Vice Chancellor, Knight Bruce, put the case thus: 'Money is due from A. to B., in trust for C. B. is indebted to A. on his own account. A., with knowledge of the trust, concurs with B. in setting one debt against the other, which is done without C.'s consent. Can it be a question in equity whether such a transaction stand? In *Bodenham v. Hoskyns,* 2 De G., M. & G. 903, the principal was stated to be one, acted upon daily by the courts of equity, 'according to which a person who knows another to have in his hand or under his control moneys belonging to a third person cannot deal with those moneys for his own private benefit when the effect of that transaction is the commission of a fraud upon the owner."

In *Farmers' & Merchants' Bank v. Farwell,* 58 Fed. 633, 7 C. C. A. 391, it is said:

"He [a depositor] cannot by depositing moneys of others intrusted to his care pay his own debt to the bank, or enable the bank to do so. In the absence of fraud or gross negligence on the part of the third parties, the bank has no higher right or better title to their money intrusted to its depositor than the depositor has himself. It is meant here by the rule that equity will follow moneys held in a fiduciary capacity as far as they can be identified, and restore them to the beneficial owner of them. If they are deposited in the bank by a trustee, agent, factor, or bailee, even if they are mingled with his own money they do not become his property, and the bank stands in the shoes of its depositor. It must pay the money to its true owner."

See, also, *Union Stockyards Bank v. Gillespie,* 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724; *Havannah Central Ry. Co. v. Knickerbocker Trust Co.,* 135 App. Div. 313, 119 N. Y. Supp. 1035; *Gerard v. McCormick,* 130 N. Y. 261, 29 N. E. 115, 14 L. R. A. 234; *Ward v. City Trust Co.,* 192 N. Y. 61, 84 N. E. 585; *Van Alen v. American National Bank,* 52 N. Y. 1; *Commercial Bank v. Jones,* 18 Tex. 811; *Honig v. Pacific Bank,* 73 Cal. 464, 15 Pac. 58; *Burtnett v. Bank,* 38 Mich. 630; *Cady v. South Omaha National Bank,* 46 Neb. 756, 65 N. W. 906; *Rock Springs Nat. Bank v. Luman,* 6 Wyo. 123, 42 Pac. 874; *Town of East Hartford v. American Nat. Bank,* 49 Conn. 539; *Johnson*

*v. Bank,* 56 Mo. App. 257; *Clark v. First National Bank,* 57 Mo. App. 277.

It follows that the judgment of the lower court will be reversed and the cause remanded, with instructions to grant a new trial and proceed in accordance with this opinion.

TURNER, C. J., and HAYES, KANE, and DUNN, JJ., concur.