### BROOK et al. v. WERTZ et al.

No. 5163—Opinion Filed Oct. 24, 1916.

Rehearing Denied Nov. 14, 1916.

(160 Pac. 903.)

**1. Guardian and Ward — Sale of Ward's Property—Setting Aside—Parties Defendant.**

Under section 4696, Rev. Laws 1910, it was not error for the court to make Brook & Brook parties defendant in this action.

**2. Guardian and Ward — Liabilities to Third Persons—Knowledge of Claim.**

Where a purchaser in good faith at a void guardian's sale pays the purchase price thereof to the guardian, the said guardian holds the same as a trust fund for the use and benefit of the purchaser, and where the title to said property fails on account of the proceedings being void, it is the duty of the guardian to refund the money to the purchaser. And any party with knowledge of the trust receiving any part thereof acquires no title to said fund as against the true owner, and an action to recover the same in favor of the true owner will lie against the party to whom said fund was transferred contrary to the trust.

(Syllabus by Hooker, C.)

Error from District Court, Wagoner County; R. C. Allen, Judge.

Action by Tooka Apeuka against the Walton Trust Company and others, and Eck E. Brook and another, doing business under the firm name of Brook & Brook, were brought in as parties defendant. From an adverse judgment, defendants Brook & Brook bring error. Affirmed.

Brook & Brook, for plaintiffs in error.

Rittenhouse & Drake, Watts & Watts, Furry & Motter, and Jay P. Farnsworth, for defendants in error.

Opinion by HOOKER, C. On the 23d day of March, 1912, Tooka Apeuka instituted a suit in the district court of Wagoner county against the Walton Trust Company, B. F. Wertz, and J. P. Farnsworth, and in her petition filed in said action she alleged that she was a full-blood Creek Indian, regularly enrolled upon the approved rolls of the Creek Tribe of Indians and that she was the owner of the real estate involved here, but that the same was in the unlawful possession of the defendants above named, and she further alleged that said defendants claim an interest in and to said lands which constitutes a cloud upon her title, and in said action she sought judgment for the price of the lands, and that the defendants be required to deraign their title and to make profert thereof, and that she be restored to the possession of said property, and that said defendants, and each of them, be barred from asserting any title, claim, right, or interest in said property adverse to plaintiff.

Said defendants filed an answer in which they denied that plaintiff was the owner of said property, and said that on the 23d day of April, 1906, the plaintiff was a minor of the age of 12 years, and that by a judgment of the proper court one Daniel B. Childers was appointed her guardian, and he thereupon executed a bond and qualified as required by law, and that on the 1st day of June, 1911, her guardian filed a petition in the county court of Wagoner county, Okla., said court having jurisdiction of the guardianship cause of the plaintiff, asking for a sale of the real estate involved here, and that thereafter, on the 3d day of July, 1911, the county court of Wagoner county made an order directing the guardian to sell said real estate, and that, in pursuance of said order of sale and the proper proceeding had thereunder, the said Daniel B. Childers, as guardian of the plaintiff, sold said real estate to one B. F. Wertz for the sum of $7,700, which sale was afterwards confirmed, and a deed made by the guardian to the purchaser therefor, and that thereupon the said B. F. Wertz entered into possession of said property, and claimed the same adversely in fee simple from that time until the institution of said suit: that the said B. F. Wertz paid to the said guardian of the plaintiff the sum of $7,700 as the purchase price for said land, and that in order so to do he borrowed from the Walton Trust Company the sum of $5,700, to secure which he executed a mortgage upon said property, and he likewise borrowed from J. P. Farnsworth the sum of $2,000, and in order to secure the payment thereof he executed a mortgage upon this property; that no part of said mortgaged indebtedness had been repaid to said mortgagees; and it is further alleged that said money was in the possession of the guardian and under his control,

and thereupon said defendants asked the court that said guardian and his bondsmen be made parties defendant to this action, and that said guardian be required to pay said money into court to await the decision of the court, and it further appears that the court did make said guardian and his bondsmen parties defendant, and that a receiver was appointed by the court to take charge of the real estate involved here, and also to take charge of the money in the hands of the guardian, in order to preserve the same pending a decision of this cause. It further appeared that $770 of this money paid by B. F. Wertz to the guardian had under an order of the county court been paid to Brook & Brook, attorneys for the guardian, in the proceeding for the sale of said property, and the aforesaid defendants requested the court that Brook & Brook be made parties to this action, and that they be required to pay the money in their hands into court, in order that the receiver might take charge of the same to await the final action of the court. And thereupon, said Brook & Brook were made parties to this case. Thereupon the plaintiff filed a reply in which she stated that at the time said application was filed in the county court of Wagoner county asking for a sale of her property she was of age, and that all of the proceedings had in said cause from that time on were void and of no force, for the reason that she was not a minor. Upon the trial of said cause the parties thereto entered into an agreed statement of facts, which were substantially as alleged above, together with the agreed stipulation that neither the plaintiff nor any one for her ever received the portion of the purchase price for said land as above stipulated, and it was further stipulated that at the time the order was made in the county court of Wagoner county for a sale of plaintiff's property she was of age, and not a minor. Thereupon the court rendered a judgment in favor of the plaintiff, restoring to her the possession of all of said land free and clear from all incumbrances, and directed that the mortgagees be returned their money, and further rendered a judgment in favor of B. F. Wertz against Brook & Brook for the sum of $770, being the money paid by Childers to Brook & Brook, for legal services in said action; they having declined to pay the money to the receiver herein. To reverse this judgment Brook & Brook have appealed to this court.

It is contended by the plaintiffs in error that no contractual relation existed between them and B. F. Wertz, the purchaser of said property, that they, Brook & Brook, received this money as compensation for services ren-

dered Childers as guardian of the plaintiff, and that, if the same was unlawfully paid to them, the purchaser, B. F. Wertz, is not entitled to recover or to maintain an action against them therefor, and that only the guardian, if any one, could maintain an action against them for matters arising therefrom; while the defendants in error contend that this $7,700 was paid by B. F. Wertz, the purchaser at said guardian sale, into court for a specific purpose, and that purpose was the purchase price of the property of the supposed ward, the plaintiff here. The title to said property having failed, the purpose of the trust cannot be carried out, and therefore the purchaser is entitled to a return of said money, and is entitled to follow the same wherever it may be found, and any parties connected with the subject-matter who may have knowingly received any part thereof may properly be ordered to return said money to him.

There are two questions to be determined here: First, did the court err in making Brook & Brook a party on application of Wertz, the purchaser of said property? Second, did the court err in rendering a judgment in his favor against Brook & Brook for that part of the purchase money paid by him for the land which they received for services rendered the guardian in this proceeding to sell the land of the ward, all of which proceedings were void, for the reasons stated hereinbefore?

Under the view that we take of this case the order of the court in making the plaintiffs in error a party was proper; for section 4696 of the Revised Laws of 1910 provides:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

The Supreme Court of Kansas, in Martin v. Martin, 44 Kan. 295, 24 Pac. 418, said:

"In an action to forfeit an estate in certain land, where the court has acquired jurisdiction to hear the case, it may adjudicate and pass upon all of the real and substantial rights of the parties connected with the subject-matter of the litigation, in order to avoid a multiplicity of suits."

And in Seibert v. Thompson, 8 Kan. 65, the same court said:

"Where a court of equity has all the parties before it, it will adjudicate upon all the rights of the parties connected with the subject-matter of the action, so as to avoid a multiplicity of suits."

And Mr. Pomeroy on Code Remedies (4th Ed.) sec. 229, says:

"If a person not thus immediately interested is nevertheless so related to the subject-matter and to the principal defendant that, upon the plaintiff's success, he will be liable to be proceeded against by such defendant, and to be compelled to make compensation in whole or in part for the loss, he is consequently interested in the subject of the action, and is also, in general, a necessary, or at least a proper, codefendant. Equity requires this class of persons to be joined as defendants, not because they will be directly affected by the decree when rendered, but because, if the plaintiff succeeds against the principal defendant, the latter will then have the right to call upon them to reimburse him, wholly or partially, or to do some other act which shall, according to the nature of the case, restore or tend to restore him to his former position before recovery against him. To avoid a multiplicity of actions, such persons should, in general, be brought into the suit in the first instance, so that their secondary or consequential liabilities may be determined, and adjusted together with the main issues in the one decree."

Also the Supreme Court of Iowa in Camp v. McGillicuddy et al., 10 Iowa, 202, said:

"A court of equity may require that a person whose rights may not be directly affected by a decree in accordance with the prayer of the bill be made a party where it is necessary to avoid a multiplicity of suits."

And in the body of the opinion it is said:

"There are cases in which it is proper and necessary to make a person defendant to a proceeding in equity, upon the ground of avoiding a multiplicity of suits. His rights may not be directly affected by the decree, but it may occur that, if the complainant succeeds, the respondent will thereby acquire a right to call upon the party omitted or not joined, either to reimburse him, or reinstate him in the position lost by the complainant's success. And, if so, the person consequentially liable to be thus affected, should be before the court that his liability may be adjudicated by one proceeding."

And in 16 Cyc. 188, it is said:

"In order to accomplish the object of completely adjudicating the controversy and of rendering the performance of the decree perfectly safe to those compelled to obey it, it is frequently necessary to bring in as a party one against whom or whose interest plaintiff seeks no relief. but against whom the principal defendant would have a demand in the event of plaintiff's success."

The purchaser here at this guardian sale paid his money to the guardian for the specific purpose of purchasing the real estate of the ward. When it reached the hands of the guardian it became a trust fund in his hands for that specific purpose, and when the object and purpose of the trust failed, on account of the proceedings being void, it then became the duty of the guardian to refund the money to the purchaser, and any sums paid out by him to any party connected with this proceeding must be deemed to have been received by them subject to the lien or trust held by Wertz to said money.

The order of the court directing the guardian to pay to plaintiffs in error an attorney's fee in that case did not justify the guardian in paying the same, nor justify the attorneys in receiving the same from him. The claim of Wertz to this money is superior to the claim of the plaintiffs in error for services thus performed by them for the guardian. This money, under this state of case, did not belong to the ward, and the guardian had no right of ownership in it, nor lawful control over it, and that part which was paid by him to his attorneys does not lose its character as a trust fund, but may be followed by Wertz, the purchaser, and subjected to his claim and lien.

The Court of Appeals of the District of Columbia, in Willey v. Stormont, 38 App. D. C. 411, said:

"This brings us to the consideration whether Stone & Fairfax is a necessary party to this proceeding in order that a complete disposition of the rights of all of the parties can be made in the final decree.

"If the necessity to make Stone & Fairfax a party depended upon any interest of it in the subject matter of the suit, we would not hesitate to say that it would not, at least when not suggested at a reasonable stage of the proceedings. Passing without comment the question of its acting as agent of both buyer and seller, expecting to receive a commission from each for effecting a sale, it is sufficient to say that it did not become entitled thereto on a transaction not completed, under the contract therefor, whatever may be its right to recover for services actually performed, in an action against any of the parties on such a demand. The question, however, does not depend upon these considerations alone. Both parties sought relief in equity, which they were entitled to do; as the remedy at law for the situation presented would not be adequate. In addition, they consented to an interlocutory decree appointing receivers for the property, and empowering them to receive from Stone & Fairfax all of the funds in their hands derived from the transaction. In addition, they were empowered to receive rent of the property, and to renew mortgages. For this purpose, and to pay taxes, and for necessary repairs, they were empowered to use the fund, holding the balance subject to the final decree. This order was proper enough for

the protection of all concerned. But it does not appear that Stone & Fairfax delivered any of the money claimed by them as commissions. It seems, though the record is not clear on the point, that they only delivered the balance after deducting their commissions and probably some other charges and expenses paid in arranging the transactions.

"Under these circumstances the final decree ordering payment of the funds to the parties entitled thereto could not dispose of such of the fund as may have been retained by Stone & Fairfax. To do this it must be made a party. When so made the final decree could be so molded as to settle every matter involved. In this view, the court was right; but we are of the opinion that it should have suspended the hearing and directed that it be made a party defendant. This would have entailed delay, especially if the new party should demand, as it would have the right to do, time to take testimony on the issues in which it is involved.

"Ordinarily the matter of amendment of pleadings in equity, at the time of the hearing, is one of discretion, the exercise of which will not be disturbed without very strong reasons therefor, At the same time it is not unusual to permit an amendment after the cause shall have been taken to an appellate court. Owing to the principle of equity that a cause shall not be finally disposed of without having all parties whose interests might be affected before the court, leave to amend by making new parties is more liberally granted, especially where the necessity therefor has not been suggested, and does not become manifest, before the hearing. We are of the opinion, therefore, that the leave to amend should have been granted in this case when applied for.

"The decree will be reversed, and the cause remanded, with directions to grant the leave to make Stone & Fairfax a party, and for further hearing and a final decree not inconsistent with this opinion, making a disposition of the fund in the possession of the receivers, as well as that which may have remained in the possession of Stone & Fairfax."

In the case of Fidelity & Deposit Co., of Maryland, v. Rankin, 33 Okla. 7, 124 Pac. 71, the Supreme Court of this state said:

"(1) A depositor, having an account with a bank in which he deposited trust funds, drew his check as trustee thereon to pay his private debt to the banker. The banker, with knowledge of the trust, concurred with the depositor in the appropriation by the depositor of the trust in order to pay an individual claim held against him by the bank. Held, that the bank acquires no title to said funds as against the true owner. * * *

"(3) Where a person holding money in a fiduciary capacity pays or transfers it to a bank with notice of his relation to it, for a purpose foreign to the trust, the bank cannot hold the money as against the true owner.

"(a) An action to recover same will lie in favor of the true owner as against the party to whom the trust fund was transferred contrary to the trust."

The judgment of the lower court is affirmed.

By the Court: It is so ordered.