DAVIS ET AL. *v.* INDIANA NATIONAL BANK.

[No. 10,254. Filed March 10, 1920. Rehearing denied June 25, 1920.]

1. BANKS AND BANKING.—*Appropriation of Deposit.—Notice of Trust Character.—Liability on Checks Subsequently Presented.*—When trust funds are deposited by a firm, and the banker has notice or knowledge of their trust character, he will be liable to the holder of a check presented after he has, by means of an arrangement by check and new note, appropriated the entire balance of the account to the payment of an old note due him; but if he had no such notice or knowledge, then the holder of such check so subsequently presented would not be entitled to recover against him. p. 566.

2. BANKS AND BANKING.—*Appropriation of Depositor's Account.—Nature of Account.—Source of Funds.—Evidence.—Sufficiency.*—In an action by the holder of a check not paid for want of funds on account of the prior appropriation by the bank of the depositor's account, there was no error in the court's finding for the bank where the record showed that the depositor firm had at different times borrowed from the bank, upon notes given therefor, and placed the money so obtained in said account, and that one member of depositor firm had placed therein a large sum derived from the settlement of his father's estate. p. 569.

From Marion Superior Court (103,533); *Theophilus J. Moll,* Judge.

Action by Jefferson C. Davis and others against the Indiana National Bank. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*John A. Titsworth* and *Forney & Sipe,* for appellants.

*Aquilla Q. Jones, William W. Hammond* and *Walter D. Jones,* for appellee.

ENLOE, J.—On and for some years prior to June 7, 1915, Deere, Hawkins and Company was a partnership engaged in the business of selling live stock on commission, at the Union Stock Yards, Indianapolis. The firm did its banking business with the appellee herein and, when it sold stock consigned to it, it was its custom to indorse in the firm name all checks received in payment therefor, and deposit the same in appellee bank. It issued its checks to the consignors of such stock, drawn on appellee, in payment and settlement for the stock so sold by it.

On June 7, 1915, said commission firm received two carloads of live stock, consigned to it by one J. C. Meek, one of the appellants herein, and sold the stock at said stockyards to divers persons, receiving in the aggregate therefor the sum of $3,789.69, from which sum, after deducting the usual charges, there remained $3,712.25 due and owing to the consignors, the appellants herein. The commission firm deposited in appellee bank on June 7, 1915, $8,604.68—the amount of its sales for that day; on June 8 it deposited $6,643.39; and on each of said days drew its checks payable to consignors of the stock which it had so received and sold. At the close of business on June 7 said firm had a balance to its credit in appellee bank in the sum of $2,542.44; and at the close of business on June 8 this balance was $3,916.38. The commission firm was indebted to said bank for money loaned and for which it had executed its note in the sum of $3,700, which said note was not by its terms then due.

For several years prior to the time of the transactions in question, one C. W. Hawkins, the father of Sheridan Hawkins, who was a member of the firm of Deere, Hawkins and Company, had been a "general

guarantor" to the appellee for the debts of said Deere, Hawkins and Company to an amount not exceeding $5,000, but he had died and his estate had been settled prior to June 9, 1915. On or about May 25, 1915, appellee first learned of the death of said surety, and at once notified Sheridan Hawkins that he would have to procure another guarantor, which Hawkins promised he would do. Not having procured such guarantor, he was called to the bank, and came there on the morning of June 9, 1915, and in answer to a question concerning his ability to get a new guarantor replied, "I can't get the guarantor, and if you will look up my balance I will give you a check for the amount." Hawkins says he was then informed that the balance to the credit of his firm was $4,900, while the vice president of the bank with whom he was conversing says, "I told him he had $3,916.38, and he then gave us a check for $3,679.03, in payment of the $3,700.00 note." This check was given some time in the forenoon of June 9, but it appears that, before it was presented to the cashier of appellee, other checks drawn by said Deere, Hawkins and Company had been presented to the cashier of said bank for payment, and that when the check so given in payment of said note was presented to said cashier, before noon of said day, the balance to the credit of said Deere, Hawkins and Company in said bank had been reduced by paying of such other checks to the sum of $1,440.69, and that, upon being notified of that fact, said Hawkins executed a new note to appellee in the sum of $2,238.34, representing the deficiency on said check.

A short time thereafter, on the same day, the check in the sum of $3,712.25, which had been by said commission firm mailed to appellant J. C. Meek on June 7, 1915, was presented at said bank for payment and payment refused "for want of funds," whereupon said check

was duly protested and returned to the payee therein named. Thereupon the payee named in said check, on June 10, 1915, gave to appellee a notice in writing, informing appellee that on June 7, said Deere, Hawkins and Company had sold, as agents of said Meek, live stock to the amount of $3,789.69, and had deposited the checks received in payment therefor in appellee bank; and that said money so deposited to the amount of $3,712.25 was the property of said Meek, and that he intended to hold the bank liable therefor to said amount as for a conversion of said fund.

Thereafter this suit was brought upon a complaint in two paragraphs, to which an answer in general denial was filed. The issues thus formed were submitted to the court for trial, resulting in a finding and judgment against the appellants and, their motion for a new trial having been overruled, they prosecute this appeal, and have assigned as error the action of the court in overruling said motion.

The specifications in the motion for a new trial require a consideration of the matters hereinafter determined.

Appellants in their brief have stated their theory of the case as follows: "Appellants claim that the fund deposited by the commission firm in appellee bank, as aforesaid, was a trust fund, belonging to appellants, and ask that they be given judgment against appellee for the amount of said fund."

If it be conceded that the funds in question were "trust funds," then the question arises, Did appellee bank have notice or knowledge of that fact? If

1.  they had no such notice or knowledge, then the plaintiffs are not entitled to recover, and the finding and judgment of the lower court were right.

The rule is well settled that a banker who knows that a fund on deposit with him is a trust fund cannot ap-

propriate that fund for his own private benefit, or, where charged with the notice of the conversion, assist others in converting such fund without becoming liable. *Allen* v. *Puritan Trust Co.* (1912), 211 Mass. 409, 97 N. E. 916; *U. S. Fidelity, etc., Co.* v. *Adoue & Lobit* (1911), 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B 667; *Bundy* v. *Town of Monticello* (1882), 84 Ind. 119; *Fidelity, etc., Co.* v. *Rankin* (1912), 33 Okla. 7, 124 Pac. 71; *U. S. Fidelity, etc., Co.* v. *First Nat. Bank* (1912), 18 Cal. App. 437, 123 Pac. 352.

In the case last cited it was said: "The decisions * * * cited by appellant, wherein it was held the bank was liable to the *cestui que trust* or sureties of his trustee, were based upon admitted facts showing that the bank, with full knowledge that the fund was held in a fiduciary relation, permitted it to be used by the trustee in the payment of a personal debt due from him to the bank, thereby obtaining profits for itself by knowingly participating in the wrongdoing of the trustee."

In the case of *Allen* v. *Trust Co., supra,* it was said: "The principle governing the defendant's liability is that a banker who knows that a fund on deposit with him is a trust fund, cannot appropriate that fund for his private benefit, or where charged with notice of the conversion join in assisting others to appropriate it for their private benefit, without being liable to refund the money * * *."

It will be noted that the account was carried in the name of the said commission firm as a firm account. The checks given in payment for the stock by them sold, and by them deposited to their account in appellee bank, were payable to said firm simply by the firm name "Deere-Hawkins & Co.," and there was nothing about said checks or any of them to indicate that the money thus to be paid was a "trust fund."

In *Miami County Bank* v. *State, ex rel.* (1916), 61 Ind. App. 360, 112 N. E. 40, it was said: "An administrator or other person having charge of trust funds may deposit them in bank to the credit of his personal account and check them out in the usual course of business and the bank, though it has knowledge of the character of the funds so deposited, is not thereby made liable to the beneficial or actual owners of such funds, in the absence of any knowledge on its part that the funds are being misappropriated or misapplied by such trust officer."

In the case of *Duckett* v. *Mechanics' Bank* (1897), 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. 513, it was said: "There can be no dispute that as a general principle all persons who knowingly participate or aid in committing a breach of trust are responsible for the money and may be compelled to replace the fund which they have been instrumental in diverting. * * * If the bank knowingly aided and participated in Clagett's breach of trust, then the bank is, beyond dispute, as responsible to the new trustees as is the defaulting trustee himself. This liability of the bank depends, however, altogether upon the contingency that it knowingly aided the trustee, Clagett, to commit the default of which he was undeniably guilty. * * * It is equally true that whenever money is placed in bank on deposit and the bank's officers are unaware that the fund does not belong to the person depositing it, the bank upon paying the fund out on the depositor's check will be free from liability even though it should afterwards turn out that the fund in reality belonged to some one else than the individual who deposited it. * * * In the absence of notice or knowledge a bank cannot question the right of its customer to withdraw funds, nor refuse (except in the instances already noted) to honor his demands by check; * * *."

The appellants strongly rely upon the case of *Continental Nat. Bank* v. *McClure* (1916), 60 Ind. App. 553, 111 N. E. 191. From a reading of that case it will be observed that the complaint therein alleged: (1) That the fund in question was a trust fund; (2) that the bank knew that said fund was a trust fund; (3) knew that said fund was appellee's money; and (4) with such knowledge wrongfully credited said money upon a note given to said bank by H. A. & Co. and then held by said bank. There was a trial resulting in a finding and judgment in favor of McClure, plaintiff in that case, and against the defendant bank. The finding in that case, being in favor of the plaintiff, was a finding in his favor upon each and every material fact therein.

In the instant case the finding was in favor of the defendant, appellee bank, and if the appellants, upon the trial thereof below, failed to establish any one or more of the facts necessary to make out their case, such failure would necessitate a finding and judgment against them, as upon them rested the burden of proof.

It is shown by this record that said commission firm had at different times borrowed money from appellee bank, giving a note therefor, which funds so obtained they had placed to their credit in the account in question; also, that Sheridan Hawkins had received in the settlement of his father's estate, within a few months prior to June, 1915, the sum of $2,500, which he had deposited in appellee's bank to the credit of his firm, as a credit in the account, the moneys of which the appellants urge were trust funds.

Upon the whole record before us, we cannot say that the court erred in finding for the appellee. We find no error in this record, and the judgment is therefore affirmed.