JOSEPH W. HUNGERFORD *vs.* RENNSELAER L. CURTIS, Receiver *et al.*

JUNE 30, 1920.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Fiduciary Relation. Principal and Agent. Fund Impressed with Trust. Following Fund.*

Where one occupied a fiduciary relation to his principal as his investment agent and deposited a sum of money belonging to his principal together with money of his own, in his own personal account finally converting the fund into a cashier's check, payable to his wife, the intermingled deposit was impressed with a trust in favor of the principal to the amount of the latter's share, and the fact that the money of the principal was intermingled with that of the agent did not destroy the principal's equitable title and his right to follow and reclaim it.

*(2) Fiduciary Relation. Principal and Agent. Trusts. Following Fund.*

Where one who occupied a fiduciary relation as the investment agent of another, intermingled funds of his principal with his own and deposited the fund in a bank in his own personal account, and the bank subsequently went into the hands of a receiver, and prior to the receivership the agent had

converted the fund into a cashier's check payable to his wife, and the dividends on the claim were deposited by him in another bank, the delivery of the deposit book of the latter bank by the agent to the receiver to be held by the latter either as collateral security for the payment of the indebtedness of the agent to the bank or merely for the purpose of exerting an influence. upon the agent to pay such indebtedness cannot affect the rights of the principal.

(3)  *Fiduciary Relation.  Principal and Agent.  Trusts.  Following Fund.*

Where one who occupied a fiduciary relation as the investment agent of another intermingled funds of his principal with his own and deposited the fund in a bank in his own personal account which subsequently went into the hands of a receiver, and prior to the receivership had converted the fund into a cashier's check payable to his wife, the receiver is not entitled to enforce a lien on the claim against the bank in satisfaction of a judgment in favor of the receiver against the agent, where it does not appear the bank ever gave the agent any credit on the strength of the deposit.

(4)  *Fiduciary Relation.  Impressing Trust.  Following Fund.*

Where one who occupied a fiduciary relation as the investment agent of another intermingled funds of his principal with his own and deposited the fund in a bank, in his own personal account, and at one time had drawn out the funds of the principal which amounted to over $10,000 to less than $100, part of the balance being represented by cashier's checks he was carrying and thereafter gathering together what funds of his principal he had and mingling them with some money of his own put the whole into a cashier's check of $11,000 which was subsequently exchanged many times until at the time of the receivership of the bank the fund was represented by a cashier's check for $7,800 in the name of the wife of the agent, the actual motive which prompted the agent to make the deposit of $11,000 was immaterial and he must be presumed to have restored the trust funds when he again replenished his personal account.

BILL IN EQUITY.  Heard on appeal of complainant and sustained.

VINCENT, J.  This is a bill in equity brought by Joseph W. Hungerford of East Haddan in the State of Connecticut against Rennselaer L. Curtis as receiver of the Atlantic National Bank, a corporation located in the city of Providence, State of Rhode Island, James H. Morton and Ella G. Morton, both of said city of Providence, and the National Exchange Bank, a corporation located and doing business in said Providence, to recover the proceeds of certain monies intrusted by the complainant to the respondent James H. Morton for investment.  The complainant alleges that such

monies were wrongfully deposited by said Morton in the Atlantic National Bank in his own personal account and later wrongfully applied by him to the purchase of a certain cashier's check of said Atlantic National Bank dated April 10, 1913, in the amount of $7,800.

The complainant asks that the respondent Curtis, as receiver of said bank, be compelled to transfer to the credit of the complainant the indebtedness of the Atlantic National Bank owed to Ella G. Morton as evidenced by said cashier's check and that the National Exchange Bank be ordered to transfer to the credit of the complainant certain deposits made to the credit of Ella G. Morton, being the proceeds of dividends paid to her by respondent Curtis on said claim of $7,800.

Upon a hearing of the case in the Superior Court it was adjudged and decreed that with the exception of the first deposit of $2,000 and accrued interest, the respondent Curtis was entitled to a lien on the deposit in the National Exchange Bank and upon the balance of the claim upon said cashier's check to satisfy a judgment of $10,712 in his favor and against the respondent James H. Morton.

From this decree the complainant has appealed to this court. His reasons of appeal, as summarized, present the following questions: (1) Was the purchase of the $11,000 cashier's check on November 27, 1911 a restitution of the dissipated trust funds and were the funds as evidenced by said check impressed with the original trust? (2) Was the respondent Curtis entitled to a lien on the claim of Ella G. Morton against the Atlantic National Bank on the unpaid balance of the $7,800 cashier's check? (3) Was the respondent Curtis entitled to apply the deposit of Ella G. Morton in the National Exchange Bank to the indebtedness of James H. Morton? The complainant, Joseph W. Hungerford, deceased in February, 1916, *pendente lite* and at the time of his death was eighty-seven years of age. Nellie H. Randall, the executrix of his will, has been substituted as complainant.

The original complainant, Hungerford, had known James H. Morton for some twenty years prior to 1916. In December, 1904, he intrusted Morton with $784.16 which the latter was to retain on deposit and appropriate to the purchase of securities for him whenever it might be advantageous to do so. Morton at that time was a bank clerk in Providence. He deposited this fund in complainant's name in the Old National Bank and in the course of time it grew, varying from one to ten thousand dollars. This fund was used both with which to buy securities for complainant and also to deposit dividends and interest and the proceeds of securities sold for complainant. Every six months Morton rendered to complainant an account of his stewardship. These statements showed that complainant had property consisting mostly of stocks and bonds amounting to about $60,000 and that Morton collected the interest and dividends. The Old National Bank was taken over by the Industrial Trust Company in 1906 and on August 1, 1906 complainant closed this account by drawing a check on the Industrial Trust Company payable to the order of Morton for the full amount of principal and interest which was $10,438. The same day Morton, without the knowledge and consent of complainant, deposited this check together with funds of his own amounting, all told, to $15,551.22 in the Atlantic National Bank in his own name, and from that time until November 27, 1911 complainant's money was intermingled with Morton's in this account, complainant's funds being put in and taken out of the account from time to time. Cashier's checks were issued to Morton by the Atlantic National Bank at various times from October 2, 1906 up to the failure of the bank on April 12, 1913. The bank paid Morton 4% interest on these checks. The balance of Morton's account reached its lowest point on November 14, 1911, when it was $75.99, and stayed at that amount until November 30, 1911, although he was carrying cashier's checks during that time.

On November 27, 1911 Morton gathered together what funds of complainant he had and mingling them with some money of his own put the whole into a cashier's check of $11,000 of the Atlantic National Bank payable to his order, on which he received interest of 4%. Morton testified that at this time he thought he would get Hungerford's affairs straightened out because Hungerford was an old man over eighty years of age and that he accordingly procured the check in question putting in about $900 of his own money and $10,100 of Hungerford's. This $11,000 check was exchanged on December 28, 1911 for $500 in cash and a new check for $10,500. The $10,500 check and two other checks payable to James H. Morton for $500 each were exchanged on May 14, 1912 for a check for $11,667.28, which included $167.28 of interest payable to Ella G. Morton. Morton testified that he had this check made payable to Ella G. Morton because he feared attachment on account of a business venture. On July 2, 1912 the $11,667.28 check was exchanged for two checks, one payable to Ella G. Morton for $10,000, the other payable to James H. Morton for $1,000 and the balance in cash to James H. Morton. The $10,000 check was exchanged November 30, 1912 for a new check of the same amount payable to Ella G. Morton, the object of the exchange being the collection of interest. The same thing occurred on March 1, 1913. On March 26, 1913 the $10,000 check was exchanged for one of $9,000 payable to Ella G. Morton and two aggregating $1,000 payable to James H. Morton. On April 10, 1913 the $9,000 check was exchanged for cashier's check No. 9612 for $7,800 payable to Ella G. Morton and two checks totaling $1,200 payable to James H. Morton.

During all these years, 1904–1913, Morton's semi-annual statements rendered complainant set forth balances in the Atlantic National Bank designated as "J. H. M. Funds," amounting on the various dates as follows: July 1, 1907, $7,053; December 31, 1907, $6,700; on January 1 and July 1 of the years 1908–1913, $10,000; on December 31, 1913,

$10,700. Morton testified that the "J. H. M. Fund" was the one intrusted to him by complainant and that the only reason for depositing complainant's money in his own account was in order to give himself prestige. On May 29, 1913, James H. Morton, as agent for his wife, executed proof of claim for the $7,800 as evidenced by the cashier's check. He told respondent Curtis at that time that his wife was sick and asked if Curtis would allow him to execute the proof on his wife's behalf, adding that the claim was as much his as hers, and Curtis allowed him so to do. Curtis paid the first dividend of 25% amounting to $1,950 to Ella G. Morton without question, and Morton deposited it in his wife's name on July 7, 1913, together with $50 of his own, in the National Exchange Bank. The same day Morton left Curtis's employ. When the second dividend of 12½% was declared in September, 1913, Curtis refused to· pay it to Morton and declared his intention of retaining it against the indebtedness of the latter to the bank. It was finally arranged that, in the future, checks for dividends should be indorsed by Mrs. Morton and deposited in the National Exchange Bank, the savings deposit book of the bank to be delivered to Curtis as an evidence of good faith.

On April 26, 1916 dividends to the extent of 75% of the $7,800 and accrued interest, including the $50 of Morton's own money deposited on July 7, 1913, amounted to $6,210.43. On March 20, 1914 Curtis brought suit against James H. Morton to recover the amount of six promissory notes aggregating $10,500 which were renewals of other notes given at various times to the bank by Morton in the years 1911–1913, and on March 30, 1914 recovered judgment for $10,712.49 and costs. The trial court found that in 1911 the James H. Morton account was drawn down to $75.99 and on the bank's failure on April 14, 1913 it had been wiped out; that the cashier's check of $11,000 on November 27, 1911 should be treated as if it had been put in Morton's checking account, but that Morton did not take out the check with the honest intention of replacing com-

plainant's fund and hence the trust fund must be regarded as obliterated without ever being restored.   With the exception of the fact that the Morton account had been drawn down in 1911 to $75.99 we cannot follow the conclusions of the trial court.   Morton occupied a fiduciary relation to Hungerford as his investment agent and in 1906 when Morton deposited $10,438 of Hungerford's money together with $5,113.22 of his own in his own personal account, the intermingled deposit was impressed with a trust in favor of

(1) Hungerford to the amount of the latter's share.   The fact that complainant's money was intermingled with Morton's did not destroy complainant's equitable title and his right to follow and reclaim it.

In *Knatchbull* v. *Hallett*, 13 L. R. Chan. Div. 696, it was held that if money held by a person in a fiduciary character, though not as trustee, has been paid by him to his account at his bankers the person for whom he held the money can follow it, and has a charge on the balance in the banker's hands.

In *National Bank* v. *Ins. Co.*, 104 U. S. 54, the court adopted the finding in *Knatchbull* v. *Hallett*, *supra*, and said further, "If they (the proceeds) cannot be identified by reason of the trust money being mingled with that by the trustee, then the *cestui que trust* is entitled to a charge upon the new investment to the extent of the trust money traceable into it."

In *Slater* v. *Oriental Mills*, 18 R. I. 352, our court has stated the rule to be that, "One has an equitable right to follow and reclaim his property, which had been wrongfully appropriated by another, so long as he can find his property, or its substantial equivalent if its form has been changed, upon the ground that such property, in whatever form, is impressed with a trust in favor of the owner.   If the trustee has mingled it with his own, he will be deemed to have used his own, rather than another's, and so to leave the remainder under the trust; and this is a sufficient identification for the owner."   See also *Newell* v. *Hadley*, 206 Mass. 335; *Boyle*

v. *Northwestern National Bank*, 125 Wis. 498; *Van Alen* v. *American National Bank*, 52 N. Y. 1; *First National Bank of Auburn* v. *Eastern Trust Co.*, 108 Maine 79; *Cushman* v. *Goodwin*, 95 Maine 353.

The delivery of the bank book by Morton to the receiver to be held by the latter either as a collateral security for the (2) payment of the indebtedness of Morton to the Atlantic National Bank or merely for the purpose of exerting an influence upon Morton to pay such indebtedness cannot affect the rights of the complainant.

The real purpose of the receiver in retaining the bank book was probably correctly stated in his letter to the comptroller of the currency under date of February 8, 1916, in which he said, "I was to hold the savings book in order that I might know the fund was kept intact." In whatever fashion the delivery of the bank book to Curtis, as receiver, was designed to operate, that transaction cannot be severed from its association with the antecedent indebtedness of Morton to the Atlantic National Bank.

The respondent Ella G. Morton, in whose name the deposit in the National Exchange Bank stands, makes no claim to it and the respondent James H. Morton concedes that it is the proceeds of the money intrusted to him by the complainant. There was no transfer of the deposit in the National Exchange Bank for a valuable consideration and such deposit must therefore yield to the prior equity of the complainant.

In *National Bank* v. *Insurance Co.*, 104 U. S. 54 at p. 67, the court said: "As between *cestui que trust* and trustees and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust."

We think therefore that as between complainant on the one hand and James H. and Ella G. Morton on the other

(3) the deposit in the National Exchange Bank savings department is impressed with a trust in favor of the complainant, and that such trust and the equitable right in complainant arising therefrom is not cut off or destroyed by the transaction between the Mortons and the respondent Curtis whereby Curtis obtained possession of the bank book. Dividends to the amount of 75% have been paid upon the cashier's check for $7,800 which said dividends are included in and make up the fund now in the National Exchange Bank in the name of Ella G. Morton. The respondent Curtis, as receiver of the Atlantic National Bank, is not entitled to enforce a lien on the balance due on this cashier's check in liquidation of its claim against James H. Morton. Curtis in his letter to the comptroller of the currency, before referred to, says, "I realize that we could not claim the funds as against Mrs. Morton if she demanded payment, but my argument to Mr. Morton was successful in so far that he agreed to have his wife indorse the checks and deposit the dividends in the savings department of the National Exchange Bank." It is alleged that Morton, desiring to make and file the proof of claim for his wife against the Atlantic National Bank, asked that he might be allowed to execute such proof in her behalf, stating that the claim was as much his as hers. In as much as it appears that the claim did not belong to either of them, this statement may be said to have been literally true.

That the Atlantic National Bank never treated James H. Morton as the depositor of the funds represented by the $7,800 check is evidenced by the statement of the respondent Curtis in his answer to the complainant's bill that, "at the time of so receiving said funds and issuing said check against same, had no knowledge or notice that said funds were not the funds of Ella Morton." It does not appear that the Atlantic National Bank ever gave Morton any credit on the strength of this deposit and therefore it cannot set off the indebtedness of Morton against the complainant Hungerford, or his representative. *Bank of Metropolis* v.

*New England Bank*, 6 Howard 212, 227; *Porter* v. *Roseman*, 165 Ind. 255; *Cady* v. *So. Omaha National Bank*, 46 Neb. 756; *Knight* v. *Fisher*, 58 Fed. 991.

In *Falkland* v. *St. Nicholas National Bank of New York*, 84 N. Y. 145, the firm of Ruger Brothers deposited money belonging to their customers in the name of their bookkeeper and the bank sought to set off Ruger Brothers' indebtedness against this deposit. The court denied the bank's right to a lien on the ground that it had not proved that Ruger Brothers owned the fund although the bookkeeper denied any title in himself. The court said: "The rule that a bank has a general lien upon all moneys or funds in its possession belonging to the depositor . . . does not interfere with the right of third parties, whose moneys have become mingled with those belonging to the depositor, to assert and maintain a claim to the same while in possession of the bank, and by an action to recover the amount thus deposited.

"It must be made clear that the moneys deposited actually belong to the person from whom the account is due to entitle the bank to apply them in payment of its demand. Conceding that the moneys are applicable, even although they are deposited by and in the name of another, the same as if in the name of the actual owner, the fact of ownership must be made to appear and it must be shown satisfactorily that such owner is the person indebted to the bank and really entitled to the funds deposited."

Neither the bank nor its receiver ever made any claim of lien as against Ella G. Morton until March 20, 1916. In the meantime it had paid out to her $72\frac{1}{2}\%$ in dividends and lost its lien on that amount assuming that it ever had any. As to the balance still remaining, we do not think that the receiver is entitled to a lien, the title to the fund not having been shown to have been in James H. Morton.

(4)     The respondents claim that the purchase of the $11,000 check on November 27, 1911 was not a restoration of the dissipated trust funds and that the proceeds of said check

did not become impressed with the original trust, and in this view they were sustained by the trial court on the ground that there was no actual intent on Morton's part to restore these funds. Morton's account was drawn down to $75.99 at the time he bought the cashier's check for $11,000 on November 27, 1911. We think that the actual motive which prompted Morton in making this deposit is immaterial and that he must be presumed to have restored the trust funds when he again replenished his personal account.

In *Baker* v. *New York National Exchange Bank*, 100 N. Y. 31, the plaintiff sought to recover on check drawn by "Wilson Brothers' agents" on the defendant bank. The moneys deposited in this account were trust moneys, the proceeds of commission sales, all of which was known to the bank. Subsequent to the last deposit of trust moneys in this account, the account was depleted and still later replenished by a deposit of Wilson Brothers' own funds. The bank therefore claimed a right to set off Wilson Brothers' indebtedness to it against the "Wilson Brothers' agents" account replenished by Wilson Brothers' personal funds. The court denied to the bank any right of set-off and held that when Wilson Brothers "made up the amounts so used, and deposited them in the trust account, the amounts so deposited were impressed with the trust in favor of the principals, and became substituted for the original proceeds and subject to the same equities."

In *United Bank of Troy* v. *Weatherby*, 70 N. Y. App. Div. 279, the court said: "The claim is made by the administratrix that the several withdrawals and restorations made by Weatherby in his lifetime operated to extinguish the identity of the money originally deposited belonging to these companies. The complete answer to that, it seems to me, is that such withdrawals were wrongful whether intentional or inadvertent, and presumably the wrongdoer by making subsequent deposits intended to make restoration and right the wrong." See also *Re Stewart*, 178 Fed. 463.

We think that the complainant is entitled to have transferred to her, as executrix of the will of Joseph W. Hungerford, the indebtedness of said Atlantic National Bank to Ella G. Morton and to an order requiring the National Exchange Bank to transfer to her the said deposit of Ella G. Morton and to cancel the pass book issued by said bank to the said Ella G. Morton.

The complainant's appeal is sustained and the decree of the Superior Court is reversed. The parties may present to this court a form of decree in accordance with this opinion on July 6, 1920 at nine o'clock a. m. standard time.

Samuel H. Davis, Nathan W. Littlefield, for complainant.
Huddy, Emerson & Moulton, for respondent.