JOHN GARST *vs.* JOHN G. CANFIELD *et al.*

MARCH 29, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)  Principal and Agent.  Trust Funds.*

X. sold securities for Y.  It was the duty of X to obtain subscriptions and a check payable to Y. for the purchase price.  After forwarding 60% of the price to Y., X. received from Y. the certificates which he delivered to customers.  Y. was at liberty to reject any subscription.  X. was required to indorse checks for collection and permitted to retain as commission 40% of the amount received from which 40% he paid all his expenses.  X. opened a bank account in the name of "X. Manager" and no other money than checks received in payment of Y's stock went into the account.  X. made weekly reports to Y. showing the amount of the subscriptions and amount remitted and accompanied by check drawn against the account for 60%, and a receipt from X. showing the receipt of his commission.

*Held,* that there was no intention to create the relation of debtor and creditor between the parties and the fund was the property of Y.

*(2)  Trust Funds.  Mingling Funds.*

Where a trustee mingles in a bank account his own money with trust funds and then makes withdrawals for his own use he will be presumed to have used his own money to the extent that he had money in the account.  If such withdrawals exceed the amount of his own money and he afterwards deposits other money of his own it will be assumed that it was his intention to make the trust fund whole.

*(3)  Foreign Corporations.  Appointing Attorney.*

The long established rule in this state is not changed by Pub. Laws, cap. 1925, sec. 67, and a foreign corporation is entitled to enforce in the courts of this state a contract made by it within this state, although it had not complied with the statute by appointing a resident attorney at the time the contract was made, provided it had appointed such attorney before commencing suit.

ASSUMPSIT.  Heard on exceptions of plaintiff and overruled.

RATHBUN, J.   This is an action in assumpsit commenced in the Superior Court.   The original writ was served on the Mechanics National Bank for the purpose of attaching the personal estate of the defendant in the hands and possession of said bank.   The return of said bank shows that at the time of the service of said writ there was on the books of said bank the sum of $5,014.13 credited to "John G. Canfield Company, Manager."   Arthur J. Mitchell & Company, Inc. made claim to the attached fund and on motion was made a party to the suit in so far as title to said fund was concerned.   After decision in the original action for the plaintiff and before the entry of judgment the plaintiff made a motion to charge said bank as garnishee to the extent of the amount disclosed.   After a hearing said court denied said motion and granted a motion of said Arthur J. Mitchell & Company, Inc., the intervener, to discharge the garnishee, and also decided that the fund in question was the property of the intervener.   The case is before this court on the plaintiff's exceptions to the rulings of the trial court on said motions and to the decision of said court that the fund in question was the property of the intervener.

It appears from the evidence that John G. Canfield was appointed agent to represent the intervener in the sale of stocks in Rhode Island.   By the terms of the employment it was the duty of Canfield to solicit subscriptions for stocks, obtain from each subscriber a check for the full amount of the price of the stock subscribed for and remit to the intervener sixty per cent of the amount received.   Each subscription agreement provided that Arthur J. Mitchell & Company Inc., was at liberty to accept or reject the subscription.   Canfield was required to have all checks for stock made payable to the order of Arthur J. Mitchell & Company, Inc.   Canfield was required to indorse the check for collection and permitted to retain as a commission forty per cent of the amount received.   From his commission Canfield paid all of his expenses incident to the business, including office rent, remuneration to subagents, purchase

of supplies, etc. It was the regular course of business for the intervener on receipt of sixty per cent of the subscription price of a stock to send the stock certificate to Canfield who delivered the same to the subscriber.

Canfield, after receiving the appointment, opened an account in said Mechanics National Bank in the name of "John G. Canfield Company, Manager." In this account he deposited checks which he received from subscribers in payment for stock. It does not appear that money from any other source than checks received in payment for the intervener's stock ever went into this account. On August 24, 1920, the plaintiff, by the original writ in the action attached by trustee process said account. It appears from the evidence that Canfield deposited in said account checks (all of which were collected) which he had received in payment for intervener's stock to the amount of $8,530, and that the intervener was entitled to receive sixty per cent. of said amount, that is, $5,118. It is evident that Canfield had drawn for his own use more than forty per cent, his share of the amount collected through the bank, as there was but $5,014.13 in said account at the time of the attachment. Canfield, having drawn from said account more than forty per cent of the funds received from the sales of stock, the intervener contends that the whole of the attached fund is the property of the said Arthur J. Mitchell & Company, Inc., the intervener.

The fundamental question is whether the mere relation of debtor and creditor existed between Canfield and the intervener, or whether Canfield was acting in a fiduciary capacity in collecting checks through the bank and remitting sixty per cent of the proceeds to the intervener. What was the intention of the parties? The trial court evidently found that it was the intention of the intervener and Canfield that the latter should hold in a fiduciary capacity the proceeds of stock subscriptions. The findings of the trial court on questions of fact are entitled to great weight and we are unable to perceive how said court could

have arrived at any other conclusion. See *Natl. Bank v. Ins. Co.* 104 U. S. 54. The material facts bearing upon this question are undisputed. Canfield sold securities for the intervener. The securities were not sold on credit or (1) otherwise to Canfield for the purpose of resale. It was his duty to obtain subscriptions and in each instance a check payable to the intervener for the purchase price. After forwarding sixty per cent of the subscription price to the intervener Canfield received from the intervener the stock certificates which he delivered to the customers. The intervener was at liberty to accept or reject all of the subscriptions. The subscription agreement contained the following: "In case this application is not accepted for any cause, the amount paid will be returned promptly." . . .

"Make all checks payable to Arthur J. Mitchell." "Notice: If you do not receive an acknowledgment in ten days write Arthur J. Mitchell, Chicago, Ill." Canfield made weekly reports to the intervener. These reports, which are signed by Canfield, show the relation of the parties. Each report is a salesman's account with his principal. Each report shows the name of each subscriber, the amount of the subscription, the amount of the commission and the amount to be remitted. Each report was accompanied by a check drawn against said bank account for sixty per cent of the subscription price on all orders reported. Each report contained also a receipt signed by Canfield acknowledging the receipt by him of his commission. If the money belonged to Canfield and he was a debtor for a part of it to the intervener, why did Canfield receipt for his own money? Canfield in taking subscriptions for stock was required to obtain from the subscriber a check for the purchase price payable to the order of the intervener. The money represented by this check was the intervener's money. Canfield was authorized as "manager" for the intervener to indorse the check for collection. He was required to collect the check by depositing it in the bank to the credit of an account in the name of "John G. Canfield

'Company, Manager." He was required to promptly report the subscription and at the same time remit by check drawn against said account for sixty per cent of the subscription price. It is clear from the testimony that Canfield and the intervener never intended to create the relation of debtor and creditor between themselves.

It is contended by the plaintiff that Canfield is the owner of at least forty per cent of the fund attached. As we have already stated, it is evident that Canfield drew for his own use from said account more than his commissions, that is

(2) forty per cent of the money received for stock subscriptions. If a trustee mingles in a bank account his own money with trust funds and then makes withdrawals for his own use the law is settled that he will be presumed to have used his own money to the extent that he had money in the account. If such withdrawals exceed the amount of his own money in the account and he afterwards deposits other money of his to the same account, courts will assume that it was his intention in making such deposit to make the trust fund whole. *Hungerford v. Curtis*, 43 R. I. 124, 110 Atl. 650; *Slater v. Oriental Mills*, 18 R. I. 352, 27 Atl. 443. See *Natl. Bank v. Ins. Co.* 104 U. S. 54. As Canfield in the bank account in question mingled his own money with trust funds which he held for the intervener and as the trust fund is incomplete because of Canfield's withdrawals for his own use of more than the amount of his money mingled in the account, it follows that the whole of the balance belongs to the intervener.

The plaintiff contends that the intervener should be denied access to the courts of this state for the reason that the intervener was during the time when the funds in question were being deposited in said account a foreign

(3) corporation doing business in this state without having appointed a resident attorney in this state upon whom process might be served, as required by Chapter 1925 of the Public Laws. Section 67 of said chapter, after imposing a penalty upon foreign corporations and its officers for

transacting business in this state without complying with certain provisions of said chapter, including the provision requiring the appointment of a resident attorney, contains language as follows: "Such failure shall not affect the validity of any contract with such corporation, but no action at law or suit in equity shall be maintained or recovery had by any such corporation on any contract made within this state in any of the courts of this state so long as it fails to comply with the requirements of said sections." But the intervener had appointed a resident attorney upon whom process might be served and had in every respect complied "with the requirements of said sections" before it sought the aid of our courts.

Said Chapter 1925 amends, and to a considerable extent supercedes, Chapter 300 of General Laws 1909. Section 42 of said Chapter 300 has been construed by this court. Said section provides that no foreign corporation (with certain exceptions not material to this case) "shall carry on within this state the business for which it was incorporated, or enforce in the courts of this state any contract made within this state, unless it shall have complied with the following sections of this chapter."

"The following sections" require among other things, the appointment of a resident attorney upon whom process may be served. In construing said section this court held in *Swift v. Little*, 28 R. I. 109, that a foreign corporation might enforce in the courts of this state, a contract which such corporation had entered into within this state, although said corporation had not complied with the statute by appointing a resident attorney at the time the contract was made, provided the corporation appointed a resident attorney, as required by statute, before commencing suit. The construction adopted in *Swift v. Little, supra,* has been for many years the accepted construction of Section 42 of said Chapter 300. See *Frank v. Broadway Tire Exchange*, 42 R. I. 27. Had the legislature with a presumed knowledge of said construction intended to deny to a foreign

corporation the use of our courts to enforce a contract made within this state before said corporation had complied with our statutes requiring the appointment of a resident attorney, when said corporation had fully complied with said statute before seeking the aid of our courts the legislature would not have declared that "such failure shall not affect the validity of any contract with such corporation," and proceeded with the language, "but no action at law or suit in equity shall be maintained or recovery had by any such corporation on any contract made within this state in any of the courts of this state so long as it fails to comply with the requirements of said sections."

All of the plaintiff's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Curtis, Matteson, Boss & Letts,* for plaintiff.
*Ira Lloyd Letts, James Ira Shepard,* of counsel.
*Waterman & Greenlaw,* for intervener.
*Ralph M. Greenlaw, Charles E. Tilley,* of counsel.