H. H. CABLE et al., Appellants, v. IOWA STATE SAVINGS BANK, Appellee.

BANKS AND BANKING: Deposits—Funds of Person Other Than Depositor. A banker who knows that a deposit equitably belongs to a party other than the depositor is not, nevertheless, liable for the amount of checks drawn on the deposit in due course of business and paid by him before action is taken to impress a trust on the deposit.

BANKS AND BANKING: Deposits—Funds of Person Other Than Depositor. On the issue whether a deposit known by a banker to belong equitably to a party other than the depositor had been wholly paid out on a certain day on checks drawn against the deposit, the court will not *assume*, in view of other deposits made on the same day, that the checks were presented and paid in the exact order in which they were entered on the bank ledger.

**BANKS AND BANKING:** Deposits—Funds of Person Other Than Depositor. A bank will not .be permitted to apply a deposit to the payment of the depositor's matured indebtedness to the bank when the bank knows that the deposit equitably belongs to a party other than the depositor.

**EQUITY:** Pleading—General Relief—Permissible Relief. In an action against a bank to impress a trust on deposited funds which have been largely dissipated by the payment of the depositor's checks, the court, under a general prayer for equitable relief, may award plaintiff the entire balance in the fund, even though part of the balance did not represent trust funds, it appearing that no adverse party was making claim to such latter fund.

*Appeal from Woodbury District Court.*—MILES W. NEWBY,
Judge.

OCTOBER 24, 1922.

OPINION ON REHEARING SEPTEMBER 28, 1923.

SUPPLEMENTAL OPINION MARCH 4, 1924.

THIS is an action in equity, to impress a trust upon funds which it is alleged were deposited in the defendant bank by the Ward Commission Company, as plaintiffs' agents, to its own credit. The facts are fully stated in the opinion. There was a decree dismissing plaintiffs' petition, and they appeal.— *Reversed.*

*E. E. Wagner,* for appellants.

*Shull, Stilwill, Shull & Wadden,* for appellee.

PER CURIAM.—The material facts are not in dispute and, briefly summarized, are substantially as follows: On or about July 3, 1920, appellants consigned 46 head of steers to the Ward Commission Company, a corporation located, and engaged in the live stock commission business, at Sioux City, Iowa, for sale upon the market, with directions to remit the net proceeds derived therefrom to the Hudson State Bank, of Hudson, South Dakota, the point at which the shipment originated. The steers

were sold to one Birmingham for $7,561.25, who gave his check for that amount to the Ward Commission Company, payable to its order. The Ward Commission Company, on July 6th, deposited the check in the appellee bank, to the credit of its general account. On July 3d, the Commission Company drew a check, payable to the Hudson State Bank, for $7,452.11, the proceeds of the sale, less commissions, yardage, and freight, and forwarded the same by mail to the payee, as directed by appellants. July 4th was Sunday, and Monday was observed as a legal holiday. The check of the Ward Commission Company, which was received by the Hudson State Bank in due course of mail, was presented to appellee on July 7th for payment. Payment was refused by the bank upon the ground that there were not sufficient funds in the bank to the credit of the drawer to pay the same. The books of appellee on said date showed a tentative balance of something in excess of $10,000; but it is claimed by the bank that the balance was made up, in large part at least, of checks that had been deposited in the bank by the Ward Commission Company and sent out for collection, but which had not yet been paid. W. M. Ward, the president of the Ward Commission Company, was indebted to appellee upon a note for $3,000, upon which there was a balance due of $2,500, and the Ward Commission Company was indebted to the bank upon a note for $4,000, upon which there was a balance due of $2,313.67.

Some time before the close of business on July 7th, the bank charged the account of the Ward Commission Company with $4,897.41, the amount due on the notes, and issued a cashier's check to itself for $2,338.03, the balance then remaining in the account. The cashier's check was still held by appellee at the time of the trial.

It is not claimed by appellee that the beneficial owner of a fund deposited in a bank by a factor or commission merchant to his own credit may not maintain an action in equity against the bank to impress a trust on such fund and to recover the same from the bank, if it has acquired no equitable right thereto, without notice of the claim of such beneficial owner, nor that, if any portion of the proceeds of the sale of the steers in question is now in the possession of the appellee bank, appellants

are not entitled to a decree in their favor for whatever amount
the evidence shows remains therein; but it is contended by ap-
pellee that the Birmingham check was received by it and cred-
ited to the general account of the Ward Commission Company
without knowledge or notice of appellants' claim thereto or
ownership thereof, and that same was fully paid out and dissi-
pated on July 6th upon checks drawn by the Ward Commission
Company and presented for payment and paid in the usual
course of business, and that if, upon any theory, any portion
of such deposit was in the possession of the bank on July 7th,
and applied by it to the payment of the indebtedness of either
W. M. Ward or the Ward Commission Company, it was so ap-
plied in good faith, for a valuable consideration, and without
notice of any claim or right of appellants' thereto, and that,
therefore, the bank is not liable.

The law is well settled that the title to property consigned
to a factor or commission merchant for sale remains in the
consignor, and that such factor or commission merchant holds
the proceeds derived from the sale of such property in a fidu-
ciary or trust capacity, and that its character is not changed
by being placed to his credit in the bank (*Union Stock Yards
Nat. Bank v. Gillespie,* 137 U. S. 411 [34 L. Ed. 724]; *Central
Nat. Bank v. Connecticut Mut. Life Ins. Co.,* 104 U. S. 54 [26
L. Ed. 693]); that the owner may maintain an action in equity
against a bank, to impress a trust upon any portion of the funds
deposited therein by such factor or commission merchant to
his own credit and remaining in said bank, unless it has ac-
quired an equitable right thereto without notice of the true
claims of the owner (*Smith v. Des Moines Nat. Bank,* 107 Iowa
620; *Packer v. Crary,* 121 Iowa 388; *Sholwell v. Sioux Falls
Sav. Bank,* 34 S. D. 109 [147 N. W. 288]; *Fidelity & Dep. Co.
of Maryland v. Rankin,* 33 Okla. 7 [124 Pac. 71]; *Union Stock
Yards Nat. Bank v. Gillespie,* supra; *Central Nat. Bank v. Con-
necticut Mut. Life Ins. Co.,* supra; *Clemmer v. Drovers' Nat.
Bank,* 157 Ill. 206 [41 N. E. 728]; *Hewitt v. Hayes,* 205 Mass.
356 [91 N. E. 332]); that a bank may appropriate a general
deposit of a debtor to the discharge of a matured indebtedness
(*Smith v. Sanborn State Bank,* 147 Iowa 640); that a *cestui
que trust* cannot recover trust funds which were deposited in a

bank by the trustee in his own name, and which, without notice of its trust character, the bank has applied to the payment of a matured indebtedness, surrendering to the trustee the evidence of the indebtedness (*Smith v. Des Moines Nat. Bank,* supra; *Kimmel v. Bean,* 68 Kan. 598 [75 Pac. 1118]) ; and conversely, that the owner may maintain an action in equity against the bank if such trust fund has been applied by it with notice of the claim of the *cestui que trust* to the payment of a matured indebtedness of the trustee (*Smith v. Des Moines Nat. Bank,* supra; *Allen v. Puritan Trust Co.,* 211 Mass. 409 [97 N. E. 916] ; *Fidelity & Dep. Co. of Maryland v. Rankin,* supra; *Clemmer v. Drovers' Nat. Bank,* supra; *Union Stock Yards Nat. Bank v. Gillespie,* supra) ; that, if the trust fund be withdrawn by the trustee in the usual course of business, so that the same has been entirely dissipated, an action against the bank cannot be maintained (*Hanson v. Roush,* 139 Iowa 58; *Smith v. Des Moines Nat. Bank,* supra; *Stilson v. First St. Bank,* 152 Iowa 724; *Officer v. Officer,* 120 Iowa 389; *Jones v. Chesebrough,* 105 Iowa 303; *First State Bank v. Oelke,* 149 Iowa 662) ; that it will be presumed, where a trustee has deposited trust funds in a bank to his general credit, with funds belonging to himself, that withdrawals made by him will be of his own, and not of the trust, funds (*Hamm Brewing Co. v. Flagstad,* 182 Iowa 826; *Importers & Traders' Nat. Bank v. Peters,* 123 N. Y. 272 [25 N. E. 319]).

The decision of this case must be rested upon the foregoing general principles. The bank is solvent, and no rights of creditors are involved. First, as to the subject of notice: The evidence shows that the Ward Commission Company is a corporation organized for and engaged in the business of buying and selling live stock upon a commission; that it did not carry on the business of buying and selling live stock for itself; that the account kept at the appellee bank was in the name of the corporation; that it deposited the proceeds of the sale of live stock therein to the credit of its general account and remitted the net amount due its customers by checks drawn upon appellee; that the president of the bank at one time owned stock in the corporation; that the names of the customers of the commission company

1. BANKS AND BANKING: deposits: funds of person other than depositor.

were not customarily disclosed to the bank when deposits were made, but that the bank officers were thoroughly familiar with the business of the commission company and the manner in which it was carried on; and that the funds deposited by it were received from the sale of live stock and were remitted to the shipper, less charges, by checks drawn upon appellee. The necessary conclusion from all the facts and circumstances is that appellee knew that the only interest of the commission company in deposits from the proceeds of the sale of live stock was for commissions, freight, yardage, and other expenses incidental to the handling and disposition of the live stock.

We are of the opinion that the bank was charged with notice of the trust relation of the commission company with its customers, and that the funds deposited, less the items above suggested, belonged to the shipper. It was clearly the duty of the bank to pay all checks drawn by the commission company and presented to it, so long as there were funds to the credit of the drawer for that purpose; and so far as the fund in question was withdrawn by the depositor, the bank is relieved from liability.

Second. Were the proceeds of the sale of the steers represented by the Birmingham check wholly dissipated prior to the presentation by the Hudson State Bank on July 7th of the check received by it from the Ward Commission Company? The balance in the bank to the credit of the commission company at the opening of business on the morning of July 6th was $22,307.12. Deposits were made during the day as follows: $9,055.43 and $6,547.07. A large number of checks drawn by the commission company were paid during the day, so that the balance to its credit at the close of business on July 6th was $1,570.35. A copy of the bank ledger showing the account of the commission company with the bank from July 1 to July 13, 1920, both inclusive, was introduced in evidence by appellants. It shows an entry under the caption "New Balance," on July 6th, of $4,964.72. The letters "O D" in capitals appear on the ledger, immediately to the right of the above entry. These letters, the evidence shows, were intended to indicate that the account was overdrawn to that extent. No other evidence was offered upon this point, but it is insisted by appellee that this

2. BANKS AND BANKING: deposits: funds of person other than depositor.

entry upon the ledger shows conclusively that the proceeds of the sale of the 46 steers to Birmingham, which are included in the item of $9,055.43, were entirely dissipated on July 6th, and that the balance of $1,570.35 is a part of the deposit of $6,547.07 which was made later in the day. The entry on the bank ledger of the new balance designated as an overdraft was doubtless made for the convenience of the bank, and it might be that, if the checks, which vary greatly in amount, were entered upon the ledger in the exact order in which they were presented and paid by the bank, the whole of the fund represented by the Birmingham check was, in fact, dissipated; but the court cannot take judicial notice of the time or order in which the checks were presented and paid, or in which the entries were made upon the book, nor of the time when the entries were made, nor that they were, in fact, entered in the strict order of payment. The custom of the bank in this respect is not shown, nor was other evidence introduced for the purpose of showing that the checks were, in fact, entered upon the ledger in the exact order in which they were presented for payment and paid. The overdraft may have been a theoretical one only. How closely, in point of time, the two items were deposited, or just how the checks were handled by the bookkeepers after they had been paid, does not appear. The sheet of the ledger showing the account was identified by the vice president of the bank, who did not make the entries, and who admitted that his testimony was based entirely upon the entries shown above. In the absence of evidence tending to show that the checks were entered upon the ledger in the exact order in which they were paid, and that the items deposited were not actually in the bank at the time the last check was paid, we must accept the balance shown at the close of business as conclusive. So far as the record shows, the several checks which made up the credit item of $6,547.07 may have been in the bank, but not entered upon the ledger at the time the amount of the alleged overdraft was entered thereon. The credit and debit sides of the account varied, of course, during the day; but the balances shown at the opening and closing of business alone show the true state of the account.

It will be presumed that the balance of $1,570.35 at the close of business on July 6th was a part of the proceeds of the sale of appellants' steers, which the commission company held

in trust for their benefit. The ledger account shows a deposit on July 7th to the credit of the commission company of $11,296.84, and on July 8th of $984.95, and that only a few small items were drawn out by the commission company on that date. It follows that the item of $1,570.35 was not dissipated, but was a part of the amount appropriated by the bank to the payment of the notes held by it against W. M. Ward and the Ward Commission Company, or embraced in the cashier's check issued by

3. BANKS AND BANKING: deposits: funds of person other than depositor.

the bank to itself. Under the rules announced, the bank, having notice of the trust character of the fund, did not have a right to thus appropriate it. Judgment should, therefore, have been entered in favor of appellants and against the bank for this amount, with interest.

Some contention is made by appellants, upon the authority of *Garst v. Canfield* (R. I.), 116 Atl. 482, and *Hungerford v. Curtis,* 43 R. I. 124 (110 Atl. 650), that the court will presume that the deposits made after July 6th were of funds belonging to the commission company, and that they were made for the purpose of replacing the trust funds. This contention is sufficiently answered by the fact that the inference to be drawn from all the testimony is that these deposits were the proceeds received from the sale of live stock consigned to the commission company and sold in the regular course of the commission business, and that the only interest the commission company had therein was such charges as it could rightfully make against its customers.

It follows that the judgment of the court below must be reversed and the cause remanded for judgment and decree in harmony with this opinion.—*Reversed and remanded.*

### SUPPLEMENTAL OPINION.

PER CURIAM.—A petition for rehearing having been filed in this case by appellants, we have again reviewed the record. We now reach the conclusion that the original opinion should be modified to the extent of permitting the appellants to recover $2,338.03, with interest as provided by law.

It is contended by appellants, upon the authority of *Garst v. Canfield,* (R. I.) 116 Atl. 482, and *Hungerford v. Curtis,*

43 R. I. 124 (110 Atl. 650, 12 A. L. R. 1040), that the court will presume that deposits made after July 6th were of funds belonging to the commission company, and that they were made for the purpose of replacing trust funds. If we were disposed to follow these cases, the difficulty would be that the inference to be drawn from all the testimony is that these subsequent deposits were the proceeds received from the sale of live stock consigned to the commission company by others, and sold by it in the regular course of the commission business, and that the only interest the commission company had therein was such charges as it could rightfully make against its customers. In other words, it appears that the money so subsequently deposited was not the money of the commission company, but belonged to others. It is not so much regard for the interests of these others, the owners of the funds so deposited, that stands in the way of impressing a trust on these funds in plaintiffs' favor, but the fact that no presumption will be entertained that the deposit of funds not belonging to the commission company was intended as a replenishment of the depleted trust fund belonging to plaintiffs. This distinction is recognized in *Baker v. New York Nat. Exch. Bank,* 100 N. Y. 31 (2 N. E. 452), where it is said that it did not appear that there were any unsettled accounts of Wilson & Brother's (the factor and trustee) with any other person or persons for whom they were agents. In *United Nat. Bank v. Weatherby,* 70 App. Div. 279 (75 N. Y. Supp. 3), it was held that withdrawals and restorations of the trust fund did not operate to extinguish the identity of the trust fund originally deposited, since, the withdrawals being wrongful, the wrongdoer would be presumed to have intended the subsequent deposits as a restoration of the amounts wrongfully withdrawn; and that the *cestuis que trustent* had a right to adopt such acts for their benefit, so as to entitle them to the funds so restored, *unless it appeared that the money used in making such restoration belonged to someone other than the depositor.*

We are not disposed to follow the Rhode Island cases to the disregard of this distinction. If they are so followed, the logical conclusion would be that, to the extent of plaintiffs' claim, the subsequent deposits by the commission company

would constitute a trust fund, and could not be applied by the bank to the liquidation of either the commission company's indebtedness to the bank or the individual indebtedness of Ward; while we understand the present contention of appellants to be that the bank was not entitled to make the latter application, on the theory that it was not the indebtedness of the depositor. If the doctrine.of the Rhode Island cases is not followed, or the distinction pointed out is preserved, then the subsequent deposits did not take on the character of a trust fund belonging to plaintiffs, and the plaintiffs stood in no favored position in respect to the funds so deposited. They were general creditors merely, with no lien or preferred claim of any character upon it. In this view of the situation, they are in no position to complain in this action of any disposition made of such subsequent deposits.

The bank applied a portion of the funds so deposited to the payment of an obligation that, on the face of it, was the individual undertaking of Ward, but which appears, in fact, to have been given for money that went to the use of the commission company. The commission company and Ward both acquiesced in this, and plaintiffs, as mere general creditors in respect to all of the deposit not impressed with a trust in their behalf, are in no position here to question it.

The same thing is true, we think, in respect to the item of $200 applied by the bank to the commission company's obligation to pay stockyards charges.

It does appear, however, that there is a balance in the bank to the credit of the commission company, though now in the form of cashiers' checks, of $2,338.03. This sum includes the

4. EQUITY: pleading: general relief: permissible relief.

$1,570.35 which we hold was the balance upon which a trust in favor of plaintiffs should be impressed. Under their prayer for general relief, we think plaintiffs are entitled, in addition to the $1,570.35, to the remainder of the balance to the credit of the commission company, or a total amount of $2,338.03, with interest.

The bank has no claim upon this balance, and no other creditor is claiming it. We see no reason why plaintiffs may not, in this equitable action, under their prayer for general equitable relief, be awarded this. Such a result is not in con-

travention of the Negotiable Instruments Act, Section 3060-a189, Code Supplement, 1913, as construed by this court. That section is for the protection of the bank. *Hove v. Stanhope St. Bank,* 138 Iowa 39; *Dolph v. Cross,* 153 Iowa 289; *McClain & Norvet v. Torkelson,* 187 Iowa 202.

In all other respects, the petition for rehearing is overruled. The judgment of the court below is reversed, and the cause remanded for judgment and decree in harmony with the views expressed in this supplemental opinion.—*Reversed and remanded.*