### In re CHANDLER INS. AGENCY, Inc.
### No. 10181.

United States District Court
D. Maryland, Bankruptcy Division.
Sept. 15, 1950.

Louis J. Sagner, Baltimore, Md., for petitioning creditor and trustee.

Roszel C. Thomsen (of Clark, Thomsen & Smith), Baltimore, Md., for New York Casualty Co.

CHESNUT, District Judge.

The Chandler Insurance Agency, Inc., the bankrupt in the above case, was engaged in Baltimore City as policy writing agent for several fire and casualty insurance companies engaged in business in Maryland and elsewhere. Among the insurance companies so represented as agent by the bankrupt were the New York Casualty Company, the Pacific Employers Insurance Company, the Continental Casualty Company and the Sterling Fire Insurance Company.

When the bankruptcy occurred on May 5, 1950, the Chandler Insurance Agency, Inc., had collected premiums on policies written as agent for various insurance companies and due to them but not paid over to them by the agent, in the amount of more than $100,000. On March 31, 1950,

the bank account of the bankrupt amounted to only $1,733.20; but between April 1, 1950 and May 5, 1950 (the latter the date of the bankruptcy) the bankrupt collected gross premiums amounting to $36,550.79. Of this amount it had on hand in bank on May 5, 1950 $26,855.27, which represented approximately the amount of $36,550.79 above mentioned less commissions to which the agent was entitled under its contracts with the insurance companies.

The four named insurance companies filed petitions with the Referee alleging that it was possible to trace into the bank account of the bankrupt on May 5, 1950, the particular sums which had been collected by the bankrupt of premiums due on specific policies of the several separate insurance companies; and praying that the several respective amounts be paid over to them as trust funds received by the agent belonging to them, less the commissions due thereon to the agent.

Upon these petitions the Referee heard counsel for the respective companies and for the Receiver in bankruptcy, and thereafter filed his order dated June 26, 1950 in which he recited certain findings that he had made with regard to the custom and nature of the insurance law and practice relating to insurance companies and their agents in Baltimore City, and also the facts above stated including the finding that it was possible to trace the particular premiums as above stated. On the basis of the findings then made the Referee ordered that all the insurance companies, except the New York Casualty Company, were entitled to receive payment from the fund on deposit of the premiums collected by the bankrupt for them respectively and traced into the fund. This was for the reason that by virtue of the contracts of the several companies (other than the New York Casualty Company) and the well established customs, usage and applicable law affecting the relationship of insurance companies and policy writing agents, there was a trust or fiduciary relationship between the parties which on general equitable principles established and recognized in bankruptcy entitled the beneficiaries to receive the funds so on deposit as their property,

and therefore they were not merely general creditors of the estate to that extent. The Receiver in bankruptcy has not petitioned for review of this order as to any of the companies; but the New York Casualty Company being excluded from the relief which it had prayed for, has petitioned for review by its petition filed June 30, 1950, Counsel have been heard upon the matter. I conclude that the Referee was in error in excluding the New York Casualty Company from the order which should have been granted as to it as well as the three other companies.

Upon careful reading and consideration of the Referee's discussion of the matter, and after hearing counsel for the parties, it appears that the only basis for the conclusion of the Referee excepting the New York Casualty Company from the benefits of the order in favor of the other insurance companies was his construction of the written contract between the New York Casualty Company and the Chandler Insurance Agency as the policy writing agent. A copy of this contract was annexed to the original petition of the New York Casualty Company filed with its petition May 1, 1950. I have carefully read this contract. It is in general in the usual conventional form of the current type of contract between a general insurance company and its policy writing agent. It is headed "Agency Agreement with New York Casualty Company" and is executed by the Company and by the Chandler Insurance Agency, Inc. The Referee's conclusion was that this contract did not create a trust or fiduciary relationship between the parties because (1) it did not expressly state that the relationship is one of trust or a fiduciary nature; (2) it did not expressly give the agent authority to collect premiums and (3) it provided in Article 3rd (among other things) that "the agents assume responsibility for and agree to pay to the Company all premiums * * * *whether collected by the agent or not*". (Italics supplied.) The reason for this provision in the contract making the agent responsible for uncollected premiums doubtless had relation to the possibility that the agent might extend undue credit to the insured for the premiums, and to discourage him from doing so the provision was in effect that if he did do so it would be *at his own risk*.

I think these reasons do not support the legal conclusion of the Referee. The contract by virtue of its own wording, by the well established and very generally known customs and nature of the relationship (briefly recited in the order of the Referee and not disputed by counsel for the Receiver) and by the well established adjudications affecting the relationship, clearly imply a fiduciary relationship between the Casualty Company and its agent. The agreement is headed "Agency Agreement with New York Casualty Company". The other party to the contract was named as the Chandler Insurance Agency, Inc.; and throughout the contract in many places the agent is expressly referred to as the agent of the Company. The provision in the agreement that the agent should be responsible for premiums whether collected or not, did not destroy the implied nature of the agreement as a whole. It merely added a provision whereby the agent was made personally responsible for premiums due under policies written by the agent, unless by other provisions of the contract the policies were duly cancelled within sixty days without premium charge or cancelled thereafter, in which event the agent should be liable for only a pro rata portion of the premium.

As pointed out by the Referee, the agency contracts of the Continental Casualty Company and the Sterling Fire Insurance Company also contained similar express provisions as to the responsibility of the agent for premiums on policies written. But the Referee considered that nevertheless the relationship between the Continental and Sterling and their respective agents was a trust relationship because there was wording in the contract referring to the moneys as trust funds or the agent as trustee. The distinction made by the Referee seems to me to be unsound. It placed too much emphasis merely upon par-

ticular wording of the contract and too little upon the nature of the well understood relationship of the parties. The legal and equitable obligations of a fiduciary result from the real nature of the relationship between the parties and not merely upon the literal wording of their contract.

While I consider the relationship between the New York Casualty Company and its agent, the bankrupt in this case, as clear on principle, it is also well supported by other persuasive judicial authority, as the result of actual decisions in similar situations arising in bankruptcy administration. In re Mason Co., D.C., 254 F. 164; Alliance Ins. Co. v. City Realty Co., D.C., 52 F. 2d 271; Twin City Fire Ins. Co. v. Green, 8 Cir., 176 F.2d 532, modified, 8 Cir., 177 F.2d 626. See also Appleman, Insurance Law and Practice, § 8786, pp. 224-5; Dillon v. Connecticut Mutual Life Ins. Co., 44 Md. 386. I find nothing in the Annotated Code of Maryland, art. 27, § 141, and art. 48A, §§ 84 and 89, in conflict with this view. And indeed at the hearing in this case counsel for the Receiver made no contention or argument to the contrary.

In his order the Referee correctly held that the premiums of these four insurance companies collected by the Receiver and respectively traceable, belong to the respective companies, and also that premiums on policies heretofore written by the bankrupt and not yet actually collected should properly be collected by the respective companies themselves as those properly entitled thereto.

For the above reasons I conclude that the order of the Referee to the extent that it determines that the New York Casualty Company is not entitled to receive from the fund in bank on May 5, 1950 ($26,855.27), the amount of the premiums less commissions directly traceable to that fund, must be reversed. The amount so claimed by the New York Casualty Company is said to be about $7,000. If and when the final accounting results in the satisfactory tracing of that amount into the fund, the Referee should by order award it to the New York Casualty Company. This is the only point involved in the petition for review.