## In re DEXTER BUICK–GMC TRUCK COMPANY, Debtor.

## BRUNSWICK AGENCY, INC., Plaintiff,

## v.

## James L. TAFT, Jr., Receiver, Defendant.

## Bankruptcy No. BK–79–146.

United States Bankruptcy Court, D. Rhode Island.

Jan. 18, 1980.

John Moore, Providence, R. I., for plaintiff.

Taft, McSally & McKenna, Providence, R. I., for defendant.

## MEMORANDUM OPINION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on September 5, 1979, on the complaint of Brunswick Agency, Inc. to reclaim certain funds in the possession of the Debtor.

The relevant facts, not in dispute, are as follows: On February 22, 1979, Brunswick Agency, Inc. entered into a "Credit Insurance Servicing Agreement" with Dexter Buick, the Debtor corporation. By the terms of this Agreement, Brunswick was to issue insurance policies which would cover installment notes executed by purchasers of automobiles from Dexter, and Dexter was to act as a service representative of Brunswick. The Agreement provided that all premiums collected by Dexter were to be turned over to Brunswick, except for an expense reimbursement of 35% on life insurance and 45% on accident and health insurance policies.

Between the time of the Agreement and Dexter's Chapter XI petition (approximately six weeks), Dexter collected $5,767.66 in premiums on policies issued by Brunswick. Dexter placed all money received from these payments into its general account at

the Newport National Bank. At the time of the commencement of the Chapter XI proceeding on May 9, 1979, no payments of any portion of these premiums had been made to Brunswick by Dexter.

Brunswick contends that the insurance premiums received by Dexter were held in trust, that these funds did not pass into the Debtor's estate, and that consequently Brunswick is entitled to these trust funds as beneficiary. *See, American Service Co. v. Henderson*, 120 F.2d 525 (4th Cir. 1941). The receiver's position is that the Agreement between Dexter and Brunswick was merely an employment contract, and that the status of the plaintiff is therefore that of a general creditor.

The determination as to whether a trust has been established is generally resolved by the application of state, not federal law. *See, Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); *Elliot v. Bumb*, 356 F.2d 749, 753 (9th Cir. 1966); *In re Faber's Inc.*, 360 F.Supp. 946, 948 (D.Conn.1973). The Rhode Island Supreme Court has discussed the elements of a trust in several recent decisions. In *Desnoyers v. Metropolitan Life Insurance Co.*, 108 R.I. 100, 272 A.2d 683 (1971), the court defined a trust as

> "an obligation arising out of a confidence reposed in a person, for the benefit of another, to apply property faithfully and according to such confidence." *Supra*, 272 A.2d at 688.

A requisite for an express trust is an intention to create the trust, which must be established by clear and convincing evidence. *Supra*, 272 A.2d at 688. The intention to create a trust can be found in the acts of the parties and from the circumstances surrounding its creation. *See, Concannon v. Concannon*, 116 R.I. 323, 356 A.2d 487, 491 n. 2 (1976); *Lux v. Lux*, 109 R.I. 592, 288 A.2d 701, 704 (1972).

In this case several factors indicate that the relationship between Dexter and Brunswick constitutes an express trust. The Agreement provides that all money collected for insurance premiums was to be held in "trust, separate and distinct from other funds." (Plaintiff's Exhibit No. 11). While there is nothing magical in the use of the word "trust" in any agreement, *see Lord's Inc. v. Maley*, 356 F.2d 456 (7th Cir. 1965), the evidence clearly supports the existence of an express trust in this case. The undisputed testimony of John Crowley, Brunswick's president, is that he specifically asked if Dexter would set up a separate escrow account for insurance, and that Dexter agreed to do so. Crowley also testified that under normal circumstance, that is, had the relationship lasted longer, he would have followed up on Dexter's obligation to establish the separate account. We find as a fact that the testimony of John Crowley is credible and accurately describes the nature of the relationship. Because less than one month elapsed between April 10, 1979 when the first policy was issued through the Debtor, and May 9, 1979 when the petition for an arrangement was filed, we must conclude that insufficient time elapsed here to find that Brunswick's failure to monitor Dexter's procedures constitutes a waiver of the requirement to segregate trust funds.

There is no evidence that Crowley knew or had reason to believe that Brunswick's monies had been placed in the Debtor's general account, nor that Brunswick had reason to believe that the Debtor would fail to comply with the Agreement. To the contrary, the evidence indicates that during the brief period involved, Brunswick made every effort, both in the explicit language of the Agreement and in its personal dealings with the Debtor, to insure that a separate account was established.

Various other provisions in the Agreement also support the contention that a trust was created. The Agreement contained no provision for interest in the event of the Debtor's late payment, nor were policies issued in the name of the Debtor. All policies were issued on certificates bearing the name of the company from whom Brunswick obtained the master policy. There was no understanding that funds could be commingled, and the contract specifically prohibited Dexter from doing so. As such, the facts of this case can be easily

distinguished from several other cases where courts refused to find an implied or express trust. *See, e. g., Carlson, Inc. v. Commercial Discount Corp.*, 382 F.2d 903 (10th Cir. 1967); *Lord's Inc. v. Maley*, 356 F.2d 456 (7th Cir. 1965); *In re Martin's*, 11 F.Supp. 99 (E.D.N.Y., 1935).

The Agreement between Brunswick and Dexter gave rise to a trust relationship that is commonly found between insurance companies and their agents. See *In re Chandler Insurance Agency*, 92 F.Supp. 878 (D.Md.1950); *Equitable Life Assur. Co. v. Stewart*, 12 F.Supp. 186 (W.D.S.C.1935); *see also, Gen. Laws of R. I.*, § 27–3 (1956). In *In re Chandler Insurance Company*, where a bankrupt insurance agency had collected insurance premiums on policies it had written as agent, the court found that because of the

> "well established customs, usage and applicable law affecting the relationship of insurance companies and policy writing agents, there was a trust or fiduciary relationship between the parties which on general equitable principles established and recognized in bankruptcy entitled the beneficiaries to receive the funds so on deposit as their property, and therefore they were not merely general creditors of the estate to that extent." *Supra* at 879–80.

We also conclude that the facts and circumstances of this case establish that the Debtor assumed a fiduciary obligation to set aside Brunswick's funds, and that the premium payments collected by Dexter under the Agreement were held in trust.

A second issue concerns the effect of the commingling of the insurance proceeds with other funds in the Debtor's bank account, and subsequent withdrawals by Dexter.

■ Generally, one claiming commingled funds under a trust agreement can recover the funds even though they have been commingled in a bank account, if these funds can be traced into the account. *See e. g. Elliot v. Bumb*, 356 F.2d 749 (9th Cir. 1966). A problem arises, however, where funds in a commingled bank account are withdrawn by the trustee. In cases where the withdrawals exceed the amount of trust funds in the account but does not deplete the account, it has generally been held that the lowest balance in the commingled account is subject to the trust, and that subsequent deposits do not replace the withdrawn trust funds. *See Sonnenschein v. Reliance Insurance Co.*, 353 F.2d 935, 938 (2d Cir. 1965); *but see, Garst v. Canfield*, 44 R.I. 220, 116 A. 482 (1920). In the case where the bank account is *totally* depleted, however, the trust fund is extinguished. As the Supreme Court stated in *Schulyer v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914),

> "[W]here one has deposited trust funds in his individual bank account, and the mingled fund is at any time wholly depleted the trust fund is thereby dissipated, and cannot be treated as reappearing in sums subsequently deposited to the credit of the same account." *Supra* at 710, 34 S.Ct. at 466.

Brunswick has been able to trace into the debtor's account the particular premiums which had been collected between April 10 and May 4. However, on April 24, 1979, the Debtor's bank account was overdrawn. When the bank account dipped below zero on April 24, Brunswick's monies, deposited prior to that date were no longer traceable in the commingled account as to those monies Brunswick's is a general creditor.

■ The fact that Brunswick has been able to trace $2,961.94 in additional premiums into the Debtor's bank account subsequent to April 24 gave rise to a new trust in that amount. Although the account was subject to many withdrawal transactions and fluctuations, there were sufficient funds on deposit in the bank account after April 24 to cover the premiums received from the sale of the insurance policies. Whatever funds were withdrawn from the account during this period are presumed not to be trust funds, *see, Universal C.I.T. Credit Corp. v. Farmer Bank*, 358 F.Supp. 317, 325 (E.D.Mo.1973) so that as a matter of law, no withdrawals were made from funds held by the Debtor in trust for Brunswick.

Based upon the foregoing discussion, findings and conclusions, all premiums from the sale of insurance policies and deposited in the Debtor's bank account *after* the account was totally depleted on April 24, 1979, should be treated .as if they were in fact deposited in a separate trust account and were the property of Brunswick on the date of filing.

This decision applies as well to the competing claim of *GMAC v. James L. Taft, Jr., Receiver*, which seeks to impress a trust on *all* funds in the Debtor's bank account on the date of filing. Since Brunswick prevails here, and because the funds in question never became the property of the Debtor, our finding in favor of GMAC does not cover the $2,961.94 in issue here.

The parties are directed to present a judgment in accordance with the terms of this decision within ten (10) days.